No. 26,264.

THE ROSEDALE SECURITIES COMPANY, *Appellee*, v. THE HOME
INSURANCE COMPANY OF NEW YORK, *Appellant*.

SYLLABUS BY THE COURT.

1. INSURANCE—*Brokers Defined.* An insurance broker is one who acts as middleman between the insured and the insurer; one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker.

2. SAME—*Brokers—Agency for Insured.* Such an insurance broker is the agent and representative of the insured for the purpose of making the application and procuring the policy.

3. SAME—*Brokers—To Whom Broker's Knowledge Imputed.* Facts, pertaining to the risk, necessary or proper to be stated in applying for the insurance, known to such broker, are imputable to the insured, but are not imputable to the insurer unless communicated to the insurer.

4. SAME—*Brokers—When Agent of Insured.* Under some conditions the insurance broker may be the agent of the insurer. In this case the record is examined and it is *held*, there is no finding of any fact indicating that the broker was agent of the insurer in applying for and obtaining the policy in question, but the findings clearly show that the broker represented the assured in obtaining such policy.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed March 6, 1926. Reversed.

*J. E. McFadden, O. Q. Claflin,* both of Kansas City, *M. A. Fyke* and *Fenton Hume,* both of Kansas City, Mo., for the appellant.

*Louis R. Gates,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on an insurance policy against theft on an automobile. It was tried to a jury, which answered special questions and returned a general verdict for plaintiff. The defendant has appealed.

On April 15, 1921, George M. Swigart purchased from W. A. Sanders a Buick automobile for $1,500. He paid $500 cash and executed a note to Sanders for $1,158.84, secured by a mortgage on the automobile, which note Sanders on the same day sold to the

Brokers, 9 C. J. p. 509 n. 16; 14 R. C. L. 868. Insurance, 32 C. J. pp. 1053 n. 56, 1055 n. 84, 1058 n. 30, 1200 n. 27, 1315 n. 57; 14 A. L. R. 209; 14 R. C. L. 1159; 38 L. R. A. n. s. 634. Motor Vehicles, 28 Cyc. p. 50 n. 59. Trial, 38 Cyc. 1927 n. 83.

Rosedale Securities Company and assigned the mortgage and received $1,000. The $158.84 included in the note above the amount Sanders received included interest, expense, and an insurance premium for a policy of insurance to be taken out on the automobile. Swigart directed and authorized the Rosedale Securities Company to obtain for him a policy of insurance on the automobile, with loss, if any, payable to the Rosedale Securities Company. Mr. C. E. Carpenter, secretary and acting manager of the Rosedale Securities Company, inspected the automobile and made application to Ely & Mann, of Kansas City, Mo., agents for the Home Insurance Company, and a policy of insurance was issued by Ely & Mann and delivered to the Rosedale Securities Company insuring the automobile in the sum of $1,500 for one year, among other things, against loss by theft. The policy contained a provision attached to it by rider, as follows:

"In consideration of a reduction in premium, it is warranted by the insured that the automobile insured under this policy will be continuously equipped with the locking device known as 'Buick Transmission Lock' (approved by the Underwriters' Laboratories of the National Board of Fire Underwriters and bearing their label). The insured undertakes during the currency of this policy to use all diligence and care in maintaining the efficiency of said locking device and in locking the automobile when leaving same unattended."

The automobile was stolen July 29, 1921. It never was equipped with the locking device known as "Buick transmission lock." The evidence tended to show that the premium on the policy with this rider was $99, which was the premium paid in this case, and that policy carrying the same indemnity without the rider would be $129.75. The sole defense of the insurance company in this case was that the automobile had not been equipped with the Buick transmission lock. This defense is good unless for some reason it does not apply.

At the trial of the case, after plaintiff's evidence had been introduced, over the objection of defendant, plaintiff was permitted to amend his reply by alleging that the provisions of the policy with reference to the car being equipped with a Buick transmission lock had been waived by the defendant. While this court has been liberal in applying the doctrine of waiver in insurance cases, it has not gone so far as to apply pure waiver to make a contract of insurance with an applicant after loss. (*Green v. Insurance Co.*, 106 Kan. 90, 92, 186 Pac. 970.)

After the car was stolen Swigart assigned the policy and all his

interests therein to the Rosedale Securities Company, and this action is brought by the Rosedale Securities Company upon such assignment, and also in its own right as the party to whom the loss is payable. No point appears to be made by either party with respect to the dual capacity with which the action is brought, and we need give that matter no further attention. The jury answered special questions as follows:

"1. Do you find from the evidence that on July 29, 1921, between the hours of eight and eleven o'clock p. m., said automobile was stolen from George M. Swigart? A. Yes.

"2. Do you find from the evidence that George M. Swigart saw said policy or knew of any provision alleged to have been indorsed thereon referring to the Buick transmission lock before said loss? A. No.

"3. Do you find from the evidence that one C. E. Carpenter, brokered this insurance policy with Ely & Mann, general agents for the defendant, The Home Insurance Company, on or about April 15, 1921? A. Yes.

"4. Do you find from the evidence that one C. E. Carpenter saw said automobile in question and examined the same at the time of the issuance of the policy, to wit: April 15, 1921? A. Yes.

"5. Do you find from the evidence that said George M. Swigart or the plaintiff ever represented or stated that the automobile in question was or would be equipped with a Buick transmission lock referred to in the alleged indorsement on said policy? A. No.

"6. Do you find from the evidence that George M. Swigart or the plaintiff herein asked for a reduction in premium, based upon the alleged indorsement referring to a Buick transmission lock? A. No.

"7. Did George M. Swigart direct the Rosedale Securities Company, plaintiff herein, to apply for insurance on his automobile? A. Yes.

"8. Did he designate the kind of insurance to apply for? A. No.

"9. Did the Rosedale Securities Company, plaintiff herein, apply to the defendant, the Home Insurance Company, for the policy in controversy? A. Yes.

"10. Did the defendant, the Home Insurance Company, deliver to the plaintiff, the Rosedale Securities Company, the policy sued on herein? A. Yes."

Defendant moved to set aside the answers to special questions one to six inclusive for reasons stated in the motion, which was overruled. Perhaps this motion should have been sustained in part, but we do not regard this as material. Defendant moved for judgment in its favor upon the answers to the special questions notwithstanding the general verdict. Appellant contends that the overruling of this motion was error. This contention must be sustained. From these answers it is clear that Swigart directed the Rosedale Securities Company to apply for insurance on his automobile, that he did not designate the kind of insurance to apply for, that the Rosedale

Securities Company did apply to defendant for the policy of insurance in controversy, which was issued and delivered. From these findings it necessarily follows that the Rosedale Securities Company was the specifically authorized agent of Swigart for the purpose of obtaining this insurance, and he is therefore bound by the acts and knowledge of the Rosedale Securities Company in this matter.

But appellee argues that finding No. 3, to the effect that Carpenter brokered this policy with Ely & Mann, general agents for the defendant, makes Carpenter the agent of defendant. This contention cannot be sustained. In 9 C. J. 509 it is said:

"An insurance broker is one who acts as middleman between the insured and the insurer; one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker." (See, also, 32 C. J. 1053.)

In 14 R. C. L. 868 the same definition is given, to which this is added:

"A broker is the agent for the insured, according to all authorities on the subject, though at the same time for some purposes he may be the agent for the insurer, and his acts and representations within the scope of his authority as such agent are binding on the insured."

Also 4 R. C. L. 255:

"Ordinarily a broker does not act in a dual capacity as the representative of both sides to a negotiation, but only as the agent of the party who first employed him."

In *Am. Fire Ins. Co. v. Brooks*, 83 Md. 22, 31, it was said:

"It appears to be well settled that where one engages another to procure insurance the person so employed is the agent of the insured, and not of the insurer, in all matters connected with such procurement."

A broker employed by the insured to obtain insurance is usually regarded as agent of the insurance company for the purpose of collecting and remitting the premium and delivering the policy. (See *John R. Davis Lumber Co. v. Hartford Fire Ins. Co. and others*, 95 Wis. 226.)

In *Overland Sales Co. v. American Indemnity Co.*, 256 S. W. 980 (Tex.), it was held that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one who either acts as the agent of the assured, or in the capacity of a broker,

are not; the broker representing the assured for the purpose of procuring the policy and the insurer, only in order to receive and transmit the premium.   This case, on the facts, is much like the case before us.   There the person desiring insurance went to a firm and requested the firm to procure him certain insurance.   The firm was not the recognized agent of any company, but in fact did turn such business as it had to a certain insurance company.   The firm made no pretension to write the policy itself, but at the request of the person desiring insurance, made application to the general agency of the insurance company for the policy which the assured desired, and the same was issued.   The court held that such evidence showed that the firm was the agent of the assured and not of the insurance company, and that at best his relation to the insurance company was no more than that of a broker.

Cooley's Briefs on Insurance, 68, defines a broker as one who is engaged in the business of procuring insurance for such persons as apply to him for such service, quoting *Monast v. Manhattan Life Insurance Co.*, 32 R. I. 557.

In *Laundry Co. v. Insurance Co.*, 121 Tenn. 13, it was held that notice to the broker who procured insurance on property of change in ownership is not sufficient to charge the insurer therewith—citing *Devens v. Mechanics & Traders' Ins. Co.*, 83 N. Y. 168, where it was said:

"A broker who effects insurance, under no employment by the insurers, but for a commission paid by them upon the premiums received for such risks as he procures to be offered and they choose to accept, is not an agent in such a sense that they will be bound by notice to him after policies are issued." (Syl. ¶ 1.)

And many other cases.

Because Ely & Mann were located in Kansas City, Mo., it is intimated that the Missouri rule pertaining to brokers should have some bearing.   In *Edwards v. Home Ins. Co.*, 100 Mo. App. 695, the question was whether notice of cancellation to a broker was notice to the insured.   The court stated the rule to be that a broker employed by an owner to procure a policy of insurance on property, or a line of insurance, has completely performed the subject matter of the agency when he gets the insurance, and his employment is then at an end, and subsequent notice to him of a cancellation is a nullity (citing cases); but when a broker is intrusted by the owner with the duty of keeping the owner's property insured, taking out policies

thereon, renewing the same when they expire, paying premiums to be repaid by the owner, and obtaining other insurance in lieu of expired or canceled policies, and this business of dealing has been carried on for some time, the broker is the general agent of the owner with respect to the latter's insurance, and notice of cancellation given to the broker binds his principal. (Citing many cases.) The Missouri statute in question reads:

"Whoever for compensation acts or aids in any manner in negotiating contracts of insurance or reinsurance or placing risks or effecting insurance or reinsurance for any person other than himself and not being the appointed agent or officer of the company in which such insurance or reinsurance is effected, shall be deemed an insurance broker." (R. S. 1899, § 7997.)

Under the facts in this case the persons making application to the general agents of the insurance company were held to be brokers and agents of the insured.

In *Wolf v. Hartford Fire Ins. Co.*, 269 S. W. 701 (Mo. App.), it was held that whether a broker is agent of insured or of insurer depends on the facts of the particular case, though ordinarily he is the agent of the insured, and under the facts of this case he was held to be the agent of the insured. And it was further held that the mailing of fire policies by insurer's agents to a broker who was insured's agent was delivery to insured.

In *Buck v. Stuyvesant Ins. Co.*, 209 Mo. App. 302, plaintiff purchased an automobile from the corporation employing him and requested the corporation's secretary to obtain insurance for him on the car, and the secretary requested A, who handled insurance business for the corporation, to get the insurance. A placed the insurance with the general agents of an insurance company. A collected the premium for plaintiff and transmitted it, less his premium, to the general agent of the insurance company. A did not write policies for the insurance company and had no authority to prepare or countersign such policies, but the application was signed by A's agency. It was held that in procuring the insurance A was the agent of the insured, and it was further held that when a broker acts as an agent of the insured in obtaining policies, misrepresentations made by the broker in procuring the policies were made by him as agent of the insured and are binding on the insured. In this case the representation was that the automobile was not mortgaged, when in fact it was. The questions in the case were whether, as a matter of law, from this evidence, the insurance broker represented the insurer, and

whether the representation in the application as to the property not being mortgaged was such a misrepresentation as to avoid the policy. As to the first proposition it was said in the opinion:

"An insurance broker is generally the agent of the insured, although it must be determined from the facts in each particular case whether the broker represents the insured or the insurer, or each for certain purposes. This general rule of law is recognized by the courts of the country generally, and in this state particularly . . . If the broker made misrepresentations to the defendant in order to procure this policy, he was acting as the agent of plaintiff at the time, and not as the agent of the insurer. . . . And the plaintiff is bound by the representations made in the application by the broker." (Citing many authorities.)

Appellee cites *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245; *Nichols v. Casualty Co.*, 113 Kan. 484, 214 Pac. 1111, and allied cases, in which this court held that when a duly authorized and commissioned agent of an insurance company made false representations to an assured, or fraudulently filled out an application for insurance, the insurer was bound by his acts. These cases are not in point for the reason that there is no finding, nor was there an attempted showing, that Carpenter was an authorized or commissioned agent of the insurance company, nor agent in any sense except possibly that he was a broker, and a finding that he brokered the insurance policy in question to Ely & Mann, agents of defendant, and for the further reason that there is no finding of fraud, and no fraud or fraudulent representation were pleaded by plaintiff, either in his petition or reply. In his petition plaintiff declared upon the policy as written and alleged that the premium had been paid and the policy delivered. After the answer was filed pleading the "Buick transmission lock" clause and the failure to equip the car with such lock as a defense, plaintiff replied that Swigart did not know of this clause, that no one had told him about it, and that defendant had waived it.

Appellee cites cases in which a broker has been held to be agent for the insurer. There are cases, of course, where the insurer specifically requests the broker to do certain things, or being advised that the broker has done certain things adopts his acts as though he had been specifically authorized by the insurer to perform them, that the insurer is bound by such acts. In other words, the fact that one is an insurance broker does not prevent him from being appointed or commissioned by the insurer as its agent, either generally, or for a specific purpose, but these cases are in the nature of ex-

ceptions to the general rule that a broker is the agent of the insured. This case does not come within the rule of these exceptional cases. The findings are that Swigart directed the Rosedale Securities Company to apply for insurance on his automobile; that he did not designate the kind of insurance to apply for; that the Rosedale Securities Company applied to defendant for the policy in controversy; that this was done by its secretary, Carpenter, brokering the policy to Ely & Mann, agents of defendant, and that defendant delivered the policy sued on to plaintiff. These findings show clearly that the broker was the agent of the insured for the purpose of obtaining the policy. Counsel for appellee has cited no case, and our own research has disclosed none, in which, under findings, or facts as here presented, the broker was held to be the agent of the insurer. The Rosedale Securities Company, or Carpenter acting for it, may be liable to Swigart for failure to apply for and obtain proper insurance upon his car (*Rezac v. Zima,* 96 Kan. 752, 153 Pac. 500), but this is not the question before us, and we express no view as to its merits.

Other questions are argued, but in view of the conclusion reached it is not necessary to discuss them.

The judgment of the court below will be reversed, with directions to sustain defendant's motion for judgment in its favor upon the answers to special questions, notwithstanding the general verdict.