Scott M. Mann, Dysart, Taylor, Penner, Lay & Lewandoski, Kansas City, MO, H. Norman Kinzy, Strasburger & Price, Dallas, TX, for defendant.

**Larry G. STEPHENSON and Marjorie Stephenson, Plaintiffs,**

v.

**FRIZZELL INTERNATIONAL, LTD., Defendant.**

**Civ. A. No. 92–2138–O.**

United States District Court, D. Kansas.

Jan. 11, 1993.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion to dismiss for ineffective service of process and lack of personal jurisdiction.

The plaintiffs, citizens of Kansas, are in the business of breeding, raising, training and racing quarterhorses. This lawsuit arises out of a dispute between the parties over a policy of equine all risk mortality insurance taken out by the plaintiffs to insure their horses. Plaintiffs allege in their complaint that they purchased the subject policies from defendant Frizzell, a corporation organized and existing under the laws of the United Kingdom, through Frizzell's agent, Walter B. Knorpp, Jr., or Walter B. Knorpp Insurance Agency, Inc. (herein, collectively "Knorpp"), of Clarendon, Texas. Plaintiffs allege that Frizzell

unlawfully refused to pay on demand a loss covered by the policies. Plaintiffs brought suit in this court, asserting two claims for breach of contract.

Defendant now seeks dismissal for ineffective service of process. Plaintiffs attempted to effect service pursuant to Kansas Statute Annotated § 40–2001 *et seq.*, which is the Unauthorized Insurers Process Act. Section 40–2002(b) of this act provides that an unauthorized foreign or alien insurer ("unauthorized" in the sense that it is not authorized to do business in the State of Kansas) may be served with process by serving the commissioner of insurance, who then is charged with forwarding a copy of the process to the defendant by registered mail. This method for service was adopted by the Kansas Legislature out of a recognition that many state residents held policies of insurance issued or delivered in the state by insurers not authorized to do business in Kansas, thus forcing state residents to assert their rights under such policies in distant forums. *See* K.S.A. 40–2001. To remedy this situation, the legislature enacted section 40–2002(a), whereby the unauthorized foreign or alien insurer, provided it has committed one of the enumerated acts in the statute (e.g., issuing contracts of insurance to residents of the state), is deemed to have designated the commissioner of insurance as its representative for service of process. K.S.A. 40–2002(a).

Defendant contends that it is not an "insurer" as contemplated by the Unauthorized Insurers Process Act. Defendant argues that it is an insurance broker, not an insurer, because it did not underwrite the risk, but merely placed the risk by procuring the policies. Plaintiffs argue in response that this is an overly technical interpretation, and that Frizzell is clearly "engaged in the business of insurance," making Frizzell an "insurer" for the purposes of the act. The act applies only to insurers; thus, it is important for the court to determine whether or not Frizzell is an "insurer" under section 40–2001.

■ The Unauthorized Insurer Process Act does not define the term "insurer."

However, the court does not find the term ambiguous. The plain meaning of the term is that ascribed to it by Black's Law Dictionary:

> **Insurer.** The underwriter or insurance company with whom a contract of insurance is made. The one who assumes a risk or underwrites a policy, or the underwriter or company with whom the contract of insurance is made.

*Black's Law Dictionary* 726 (5th ed. 1979); *see also* 21A *Words & Phrases,* "Insurer" (1960 & Supp.1992). This term does not encompass insurance brokers because brokers place the risk, not assume it. This conclusion is supported by decisions of the Kansas appellate courts that, while not directly on point, throw some light on the subject. For example, in *Rosedale Securities Company v. Home Insurance Company,* 120 Kan. 415, 243 P. 1023 (1926), the Kansas Supreme Court stated:

> An insurance broker is one who acts as a middleman between the insured and the insurer; one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker.

*Id.* at 418, 243 P. 1023 (citation omitted). The court further observed the rule that "where one engages another to procure insurance the person so employed is the agent of the insured, and not of the insurer, in all matters connected with such procurement." *Id.* (citation omitted). *Rosedale* was cited for these propositions by the Kansas Court of Appeals in *Marshel Investments, Inc. v. Cohen,* 6 Kan.App.2d 672, 679, 634 P.2d 133, 139 (1981). Thus it is clear that the Kansas appellate courts perceive a distinction between insurers and insurance brokers in much the same way as this court does.

Should resort to statutory analysis or ascertainment of legislative intent be required, they would lead to the same conclusion. Although section 40–2001 does not define "insurer," other sections of the Kan-

sas Insurance Code do contain definitions that are illuminating. For example, Article 2, the general provisions article, defines "insurance company" (for the purposes of that article) as "all corporations, companies, associations, societies, persons or partnerships writing contracts of insurance, indemnity or suretyship upon any type of risk or loss." K.S.A. 40–201. In another section of Article 2, the term "insurance company" is defined to include "all corporations, companies, associations, societies, fraternal benefit societies, mutual nonprofit hospital service corporations, nonprofit medical service corporations, reciprocal exchanges, persons or partnerships writing contracts of insurance, indemnity or suretyship in this state upon any type of risk or loss [except for certain fraternal lodges or societies]." K.S.A. 40–222c. Although the two definitions differ with respect to the entities covered, they are the same in the sense that those entities are "insurance companies" only if their business is "writing contracts of insurance, indemnity or suretyship upon any type of risk or loss." K.S.A. 40–201 and 40–222c. While each definition is by its terms limited to the context in which it appears, these provisions support an inference that the legislature intended "insurer" in section 40–2001 to mean those entities actually writing contracts of insurance, and not those merely procuring insurance policies for interested third parties. Finally, it should be noted that the Kansas Legislature enacted Article 37 to specifically regulate the licensing and conduct of insurance brokers. K.S.A. 40–3701 et seq. Therein, a broker is defined as "any individual who acts or aids in any manner in negotiating contracts of insurance, or in placing risks or in soliciting or effecting contracts of insurance as an agent for an insured other than himself or herself and not as an agent of an insurance company or any type of insurance carrier." K.S.A. 40–3702(a). It is obvious that the legislature does not regard insurance brokers as a class of insurers; a contrary view is incompatible with the fact that the legislature found it necessary to set forth the regulations for insurance brokers in an article separate from those pertaining to insurance companies.

Plaintiffs argue that the definition of "insurer" as used in the Unauthorized Insurers Process Act may be derived by reference to the McCarran–Ferguson Act, 15 U.S.C. § 1011, et seq. The McCarran–Ferguson Act provides that the "business of insurance, and every person engaged therein, shall be subject to the laws of the several states which relate to the regulation or taxation of such businesses." 15 U.S.C. § 1012(a). Kansas adopted the Unauthorized Insurers Process Act pursuant to its powers and privileges under the McCarran–Ferguson Act. K.S.A. 40–2001. Plaintiffs cite authority for the proposition that insurance brokers are "engaged in the business of insurance" for purposes of the McCarran–Ferguson Act, and from this premise argue that insurance brokers are "insurers" under the Unauthorized Insurers Process Act.

■ Plaintiffs' argument is without merit. The McCarran–Ferguson Act gives the states power to regulate the business of insurance. The Unauthorized Insurers Process Act is a law enacted pursuant to that authority. It does not follow, however, that a statute enacted pursuant to McCarran–Ferguson necessarily applies to every person engaged in the business of insurance. The legislature specifically limited application of the statute to "insurers"; neither the McCarran–Ferguson Act nor the authority cited by plaintiffs is support for the proposition that an insurance broker is an "insurer" under the Unauthorized Insurers Process Act.

Therefore, the court concludes that the term "insurer" in section 40–2001 of the Unauthorized Insurer Process Act does not include insurance brokers. In light of this ruling, the court must next determine whether Frizzell is an insurance broker, and not an insurer, as Frizzell claims. If so, plaintiffs' service of process on the commissioner of insurance is ineffective as to Frizzell and, there having been no other service attempted, the court would be unable to exercise personal jurisdiction over Frizzell.

In a recent opinion, Judge Saffels of this district summarized the standards we follow when deciding a motion to dismiss for lack of personal jurisdiction:

> The plaintiff has the burden of establishing personal jurisdiction over a defendant, but the burden of proof varies depending upon the procedure used to determine the issue. The district court has discretion to consider a motion to dismiss for lack of jurisdiction on the basis of affidavits and other written materials. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992) (citations omitted). If a motion to dismiss for lack of jurisdiction is submitted prior to trial on the basis of affidavits and other written materials, a plaintiff is initially required only to make a prima facie showing to avoid dismissal. [footnote omitted] *Id.; Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1130 (10th Cir.1991); *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

> The allegations set forth in the complaint must be accepted as true to the extent they are not controverted by the defendant's affidavits. *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d at 1130–31 (quoting *Behagen v. Amateur Basketball Ass'n,* 744 F.2d at 733). "However, only the well-pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Ten Mile High Indus. Park v. Western Plains Service Corp.,* 810 F.2d 1518, 1524 (10th Cir. 1987) (citing *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976)), *cited with approval in Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d at 174. The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.

> *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1376 (10th Cir.1989) (citing *Becker v. Angle,* 165 F.2d 140, 141 (10th Cir.1947)).

> If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing will withstand a contrary presentation by the party moving to dismiss for lack of personal jurisdiction. *Williams,* 927 F.2d at 1130–31; *Behagen,* 744 F.2d at 733. However, to be sufficient to put the contested facts in issue, affidavits submitted in support of or in opposition to motions to dismiss for lack of jurisdiction must comply with the requirements of Fed. R.Civ.P. 56(e), *i.e.,* they must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. *See Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d at 175 & n. 6.

*Thompson v. Chambers,* 804 F.Supp. 188, 191 (D.Kan.1992).

Plaintiffs allege in their complaint that they purchased insurance from Frizzell. They argue in their brief that Frizzell is "engaged in the business of insurance" and holds itself out to be an insurer. Plaintiffs have attached a cover/debit note (sent from Frizzell to Knorpp who forwarded it to plaintiffs), which they contend is a contract of insurance. Frizzell, in response, has submitted affidavits of Hugh L.J. Hallett, who is divisional director for the company. Hallett states in his affidavit that the cover/debit note is *not* an insurance policy, but only confirms the details of plaintiffs' insurance with Lloyd's.[1] Hallett further states that Frizzell did not underwrite any of the risk covered by the policies, and that in fact (at least since 1984) Frizzell has never acted as an insurance company or insuring principal. According to Hallett, plaintiffs' insurance policies

---

1. Support for Hallett's characterization of the cover/debit note is found in Black's Law Dictionary, which defines "Cover Note" as a "[w]ritten statement by insurance agent that coverage is in effect. Distinguished from binder which is prepared by company." *Black's Law Dictionary* 330 (5th ed. 1979).

**1136**

were issued by underwriting syndicates at Lloyd's and Frizzell did not participate as an insurer in these policies.

 From the facts as they appear to the court, the court must conclude that Frizzell did not act as an "insurer" with respect to the subject policies. It appears as though Frizzell acted in this transaction as an insurance broker, and there seems to be no dispute that Frizzell procured the insurance with Lloyd's on behalf of plaintiffs (by way of Knorpp, with whom plaintiffs dealt directly). Plaintiffs have provided no affidavits or other evidence to cast a doubt on the truth of Hallett's statements. Therefore, the court must conclude that Frizzell, with respect to the policies at issue, is not an "insurer."

The necessary implication of the court's ruling on this issue is that service of process on the commissioner of insurance pursuant to section 40–2002(a) is ineffective as to Frizzell. Accordingly, the service must be quashed. As no other service has been completed, the court must find at this time that it lacks personal jurisdiction over Frizzell. The plaintiffs have requested that they be granted a reasonable time in which to complete service by alternate means. The court directs plaintiffs' attention to K.S.A. 60–203(b), in light of which it does not appear leave of court will be necessary for plaintiffs to effect valid service of process. The section provides:

> If service of process or first publication purports to have been made within the time specified by subsection (a)(1) but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service, the action shall nevertheless be deemed to have been commenced by the original filing of the petition if valid service is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff.

K.S.A. 60–203(b).

The court will defer ruling on the other issues raised by defendant in its motion to dismiss because they may be moot if proper service is not effected. The court does note that defendant's brief in support of its contention that there would be no personal jurisdiction, even had service been made under the Kansas long arm statute, is persuasive. For now, however, defendant's motion to dismiss will be denied without prejudice.

IT IS THEREFORE ORDERED BY THE COURT that plaintiffs' service of process on the defendant is quashed, but defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 11) is denied without prejudice.