(277 P.3d 421)
No. 105,245

GOLDEN RULE INSURANCE COMPANY, *Appellant*, v. ROBERT M. TOMLINSON, in his official capacity as the Assistant Commissioner of Insurance of the State of Kansas acting on behalf of the Commissioner of Insurance of the State of Kansas, and the KANSAS INSURANCE DEPARTMENT, *Appellees*.

Opinion filed April 27, 2012.

*Kevin M. Fowler*, of Frieden, Unrein, Forbes & Biggs, LLP, of Topeka, for appellant.

*Susan Ellmaker* and *Brenda J. Clary*, of Kansas Insurance Department, for appellees.

Before GREEN, P.J., MALONE and MCANANY, JJ.

MCANANY, J.: Golden Rule Insurance Company appeals the district court's decision affirming the Kansas Insurance Department's order finding it in violation of two provisions of our unfair trade practices law, K.S.A. 40-2401 *et seq*. Golden Rule challenges the Department's findings that it committed unfair claim settlement practices in violation of K.S.A. 40-2404(9)(d) (refusing to pay claims without conducting a reasonable investigation) and (f) (not attempting a good-faith effort to effectuate prompt, fair and equitable settlement of claims after liability has become reasonably clear). Dirk McClary was the intermediary between Patti Denney and Golden Rule in the acquisition of the policy in question. Golden Rule asserts it is not responsible for the acts and omissions of McClary because McClary was acting as an independent broker and as Denney's agent, not as Golden Rule's agent. We agree with Golden Rule and hold that Golden Rule should not be held responsible for McClary's acts and omissions. Accordingly, we reverse the Department's order finding Golden Rule in violation of our unfair trade practices law.

## Facts and Procedural History

Denney and her husband, both self-employed, had family health insurance coverage through an individual policy with Blue Cross and Blue Shield of Kansas City (Blue Cross). The coverage was expensive, and Denney began looking for a more affordable policy.

Apparently based upon her inquiries into alternative coverage, Denney's name appeared on a list of insurance prospects maintained by Design Benefits, an independent insurance brokerage firm in Wichita. Design Benefits gave Denney's name to McClary, a Kansas licensed insurance agent who officed in Overland Park, as somebody who might be interested in buying health insurance. McClary contacted Denney.

McClary was affiliated with Design Benefits as well as another Kansas independent brokerage firm named Hosfield. He was also affiliated with USA Benefits Group, which changed its name to America's Health Care Plan, a brokerage firm located in Illinois that is licensed in Kansas and markets insurance products of Golden Rule. These brokerage firms apparently had contracts with various insurance companies to market their insurance products in Kansas.

McClary was not a captive agent of Golden Rule; that is, he was not an employee of Golden Rule soliciting business solely for that company. McClary submitted applications for health insurance policies to several insurance companies doing business in Kansas that competed with one another for insurance business. McClary's contract with Golden Rule was entitled an "Independent Broker's Contract," and it clearly stated that McClary was not an agent of Golden Rule.

During September 2007, Denney met with McClary in her office to discuss Denney's insurance coverage options. He gave Denney his business card which indicated he was affiliated with USA Benefits but made no reference to Golden Rule. Two of Denney's employees, JoAnn Combs and Jodi Davis, were present during the meeting because they were also interested in securing new insurance policies. Davis testified that she believed that McClary was representing Golden Rule because McClary held himself out as its representative. Combs also believed that McClary represented Golden Rule. McClary testified that he did not take the time to explain his agency agreement to Denney. McClary referred to himself as an agent rather than a broker. McClary confirmed that he received a commission from Golden Rule for obtaining Denney's medical policy. Denney did not know the difference between an

agent and a broker, and she "placed her faith" in McClary and the information he was providing to her.

Denney had a history of surgeries and procedures relating to digestive issues. Denney informed McClary of her medical condition and her previous surgeries because she did not want to risk losing health insurance for her family. Combs confirmed that Denney told McClary about these medical conditions at the beginning of the meeting. Denney told McClary the dates of her previous surgeries, including the fact that she had hernia surgery in the previous 6 months.

McClary first submitted Denney's application, disclosing her digestive conditions, to Assurant Health, a company that sells insurance products that are underwritten by the Time Insurance Company. Denney's application did not receive favorable consideration, so McClary contacted Denney by phone and received her authorization to submit an application on her behalf to another insurance company, Golden Rule, based on the information that she had previously provided to him. Golden Rule is a competitor of Assurant Health and Time Insurance Company, and these two companies are not affiliated in any way with Golden Rule. Denney testified that McClary told her "not to worry" because Golden Rule would go back only 90 days into her medical history. McClary denied making any such assurance.

The application McClary submitted to Golden Rule did not disclose Denney's preexisting medical condition. Denney did not have the opportunity to review or sign the Golden Rule application before its submission. McClary could not explain why Denney's information was not accurately reported to Golden Rule except to say that he made a mistake.

Denney did not review the application prior to its submission because McClary received her consent to submit the application over the phone. However, the application contained a section immediately above the electronic signatures entitled "STATEMENT OF UNDERSTANDING" that instructs the applicants to "[r]eview the completed application and read the section below carefully before signing." The section states:

"I certify that I have personally completed this application. I represent that the answers and statements on this application are true, complete, and correctly recorded. I Understand and Agree that: (1) this application and the payment of the initial premium do not give me immediate coverage; (2) there will be no benefits for any loss incurred in the first year of coverage due to a preexisting condition; (3) incorrect or incomplete information on this application may result in voidance of coverage or claim denial; (4) this completed application, and any supplements or amendments, will be made a part of any policy which may be issued; (5) the broker is only authorized to submit the application and initial premium, and may not change or waive any right or requirement; and (6) continuation of other coverage existing on the Golden Rule effective date for more than 90 days after the Golden Rule effective date will void this coverage."

The application also contains a section entitled "BROKER STATEMENT" that directs the broker to "[r]eview the completed application before signing below." Directly above McClary's electronic signature, it states that "[e]ach question on the application was completed by the applicant(s)." Of course this did not happen.

On October 13, 2007, Golden Rule issued a policy covering Denney and her family members. Denney then cancelled her policy with Blue Cross.

In January 2008, Denney's physician, Dr. Mark Strehlow, sent a letter to Golden Rule requesting advance approval of coverage under the policy for surgery for Denney. Strehlow's letter stated that Denney had an extensive medical history related to various digestive conditions. Strehlow said that Denney was scheduled to undergo "abdominal reconstructive surgery." Strehlow later testified that Golden Rule denied payment for the procedure, and he immediately requested that Golden Rule reconsider. Strehlow told Golden Rule that Denney was experiencing a number of gastric problems and she "certainly does not feel she can wait three to six months to have this procedure done." Golden Rule denied that it rejected Strehlow's request and claims that it simply took the matter under advisement pending further investigation.

From late January 2008 into April 2008, Golden Rule conducted an investigation into Denney's medical history and her application for insurance. Golden Rule requested more information regarding Denney's medical history from Denney's various physicians.

On April 28, 2008, Golden Rule denied coverage for Denney's proposed surgery based on the fact that the conditions documented in Denney's medical records were not disclosed in her application for insurance. Golden Rule stated that if Denney's medical history had been accurately disclosed, Golden Rule's offer of insurance would have contained a rider that excluded all coverage for digestive system diseases or disorders. Golden Rule informed Denney that "we need to take the same action we would have taken if we had been aware of this information when you applied for insurance." Golden Rule offered to keep the policy in force but exclude coverage for any digestive system problems. When Denney refused to accept the exclusionary rider, Golden Rule cancelled the policy.

On May 5, 2008, Denney filed a complaint with the Department based on Golden Rule's refusal to provide coverage for treatment of her preexisting medical condition. Denney asserted that McClary misrepresented how far back Golden Rule would examine her medical history.

Responding to the complaint, McClary denied knowledge of Denney's medical conditions with the exception of a hernia repair in July 2007. McClary stated that he was "astonished to learn" that the information regarding Denney's hernia repair was not accurately represented on the application for insurance that he filled out on Denney's behalf. Golden Rule asserted that McClary was an independent insurance broker and not Golden Rule's agent.

On August 13, 2008, the Department issued an ex parte emergency order finding that Golden Rule had violated K.S.A. 40-2404(9)(d), (f) and (i), which regulate unfair claim settlement practices in the business of insurance. The emergency order stated that Golden Rule had wrongfully denied Denney coverage for a medically necessary procedure and ordered Golden Rule to pay Denney's claim.

On August 26, 2008, the Department filed an action in the district court seeking civil enforcement of the emergency order. But the district court determined that the evidence did not establish an emergency and stayed the emergency order pending final disposition of the claims against Golden Rule. The district court ul-

timately remanded the matter to the Department for an administrative hearing.

At the administrative hearing on February 19, 2009, McClary testified that he initially submitted Denney's application for insurance to Assurant Health. After learning that Assurant Health would not issue Denney a policy, McClary withdrew the application. He then called Denney and requested permission to submit her application to Golden Rule based on the information that she had previously provided to him. Denney agreed to McClary's plan to submit her application to Golden Rule, but the application submitted on her behalf did not disclose her medical condition or past surgery. McClary testified that the omission was unintentional and claimed that he must have made a mistake. Denney testified to her dealings with McClary and her belief that he was acting as an agent for Golden Rule. She acknowledged that all the representations about McClary's status came from "the words out of his mouth" and not from anything Golden Rule had provided to enable McClary to make the sale.

On May 28, 2009, the Assistant Commissioner of Insurance (on behalf of the Department) orally announced his decision, finding that Golden Rule had violated K.S.A. 40-2404(9)(d) and (f) but not K.S.A. 40-2404(9)(i). The Assistant Commissioner concluded that Golden Rule should pay for the reconstructive surgery as well as for Denney's future medical services. The Department entered its order on September 3, 2009.

On September 28, 2009, Golden Rule filed a petition for reconsideration pursuant to K.S.A. 77-529(a)(1). Golden Rule argued there was insufficient evidence to establish any unfair claim settlement practice. Following a hearing on October 15, 2009, the Department denied Golden Rule's motion for reconsideration and issued its final order.

Golden Rule then filed a petition for judicial review under the Kansas Judicial Review Act (KJRA), K.S.A. 2011 Supp. 77-601 et. seq. On July 16, 2010, the district court affirmed the Department's final order and ruled that Golden Rule violated K.S.A. 40-2404(9)(d) and (f) of the Kansas unfair trade practices law. Golden

Rule's subsequent motion to alter or amend the memorandum decision was denied, and Golden Rule appealed to this court.

*Discussion*

The scope of judicial review of a state administrative agency action is defined by the KJRA. See *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 906, 249 P.3d 434 (2011). The party asserting the invalidity of an agency's action bears the burden of proving invalidity. K.S.A. 2011 Supp. 77-621(a)(1). Under the KJRA, we exercise the same statutorily limited review of the agency's action as does the district court, as though the appeal had been made directly to the appellate court. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

K.S.A. 2011 Supp. 77-621(c) articulates eight circumstances in which a court may grant relief. It states in relevant part:

"The court shall grant relief only if it determines any one or more of the following:

. . . .

"(4) the agency has erroneously interpreted or applied the law;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Under the KJRA, we review the record as a whole to determine whether the Department's findings are supported by substantial evidence. We grant relief if we determine that "the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 2011 Supp. 77-621(c)(7). As amended, K.S.A. 2011 Supp. 77-621 now defines "in light of the record as a whole" to include the evidence both supporting *and detracting from* an agency's finding. We must now determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. K.S.A.

2011 Supp. 77-621(d); *Redd v. Kansas Truck Center,* 291 Kan. 176, 183, 239 P.3d 66 (2010).

On the other hand, our interpretation of contracts and of the applicable statutes is de novo. *Powell,* 290 Kan. at 567; *Shamberg, Johnson & Bergman, Chtd. v. Oliver,* 289 Kan. 891, 900-01, 220 P.3d 333 (2009). When an administrative agency acts in a "court-like manner," the appellate courts are equally capable of the task of statutory interpretation. *In re Tax Exemption Application of Kouri Place,* 44 Kan. App. 2d 467, 471-72, 239 P.3d 96 (2010). We construe a written contract and determine its legal effect without regard to the agency's or the district court's construction of the contract. *Shamberg,* 289 Kan. at 900-01; *Warner v. Stover,* 283 Kan. 453, 456, 153 P.3d 1245 (2007).

*Overview of Kansas unfair trade practices law, K.S.A. 40-2401 et seq.*

The purpose of K.S.A. 40-2401 *et seq.* is to regulate insurance trade practices "by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." K.S.A. 40-2401. K.S.A. 40-2403 prohibits any person in Kansas from engaging in any unfair method of competition or any unfair or deceptive act or practice in the business of insurance. The phrase "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance" includes "unfair claim settlement practices" as specified in K.S.A. 40-2404(9). The provisions of K.S.A. 40-2404(9) do not affect the substantive terms of the insurance policy; rather, the "statutory provisions provide guidelines and duties for how the contractual relationship is to be entered into and how claims are to be processed." *Davis v. John Alden Life Ins. Co.,* 746 F. Supp. 44, 48 (D. Kan. 1990). Any person who commits misconduct is subject to the imposition of civil remedies and penalties authorized by law. K.S.A. 40-2407.

K.S.A. 40-2404 provides a list of prohibited acts. In this case, the district court found that Golden Rule violated K.S.A. 40-2404(9)(d) and (f). The relevant portions of K.S.A. 40-2404 state:

"(9) *Unfair claim settlement practices.* It is an unfair claim settlement practice if any of the following or any rules or regulations pertaining thereto are: (A) Committed flagrantly and in conscious disregard of such provisions; or (B) committed with such frequency as to indicate a general business practice.

. . . .

"(d) refusing to pay claims without conducting a reasonable investigation based upon all available information;

. . . .

"(f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

If the Department properly determines that Golden Rule engaged in any such unfair claim settlement practice, the Department may take discretionary action in accordance with K.S.A. 40-2407(a). In this case, the Department found, and the district court upheld, violations of K.S.A. 40-2404(9)(d) and (f) based on Golden Rule's handling of Denney's request for a predetermination of coverage and of Denney's claim for benefits under the policy.

*Did Golden Rule act flagrantly and in conscious disregard of the provisions of our unfair trade practice law when it forced Denney to either accept the exclusionary rider or have her insurance policy voided?*

Golden Rule asserts that it did not violate K.S.A. 40-2404 by forcing Denney to accept the indefinite exclusionary rider or have her insurance policy voided. Golden Rule also contends that the agency made no findings to support its implicit ruling that it acted "flagrantly and in conscious disregard" of its duties under these statutory provisions or that it made a general business practice of engaging in such improper conduct as required by K.S.A. 40-2404(9)(A), (B).

The district court recognized that the Department failed to make explicit findings of fact regarding its conclusion that Golden Rule violated K.S.A. 40-2404(9)(d) and (f). In reviewing the record as a whole to determine whether substantial evidence supports the Department's findings, the district court seems to have reverse-engineered a finding of flagrant conduct and conscious disregard of statutory duties, or a history of misconduct, when it concluded:

"[T]he Hearing Officer based his decision on all the information contained within the Record. The Record is almost 2,900 pages of documents, including transcripts, depositions, and all the other documents that were filed by the parties. Moreover, the Hearing Officer's decision was also based on his own observations made over the course of the hearing. The Hearing Officer stated in his decision that the two statutes in question 'involve claims,' and that 'this claim should be paid.' These statements, along with all the other findings, taken in light of the record as a whole, show that Golden Rule should not only have paid the claim, but that its failure to do so along with its investigation and handling of the matter after the request was made, could be understood by a reasonable person to demonstrate that Golden Rule's actions were either 'committed flagrantly and in conscious disregard' of the statutes in question, or 'committed with such frequency as to indicate a general business practice.' "

Apparently the district court could not identify any specific act that was committed flagrantly and in conscious disregard of Golden Rule's statutory duties, nor could it identify a history of misconduct. Neither can we.

Golden Rule maintains that its action in requiring Denney to accept an exclusionary rider or to have her insurance policy voided cannot be found to be in violation of K.S.A. 40-2404(9)(d) and (f) because Golden Rule acted reasonably in its investigation of its obligation to provide medical coverage to Denney. Golden Rule persuasively argues that it could void the policy or deny the claim based on misrepresentations on the policy application submitted by McClary, who was acting as Denney's agent in this transaction.

The record contains undisputed evidence that Denney's medical history and conditions were not disclosed in the application submitted to Golden Rule. Under the clear language of the insurance application and policy, Golden Rule had the right to deny coverage. In making its oral findings, the Department, seeming to negate any findings of flagrant conduct and conscious disregard of statutory duties or a history of misconduct, recognized that this case has more than one "victim":

"There are many victims in this case. I cannot hold Ms. Denney's position as anything but being a victim, but I also want to make clear that Golden Rule has been victimized as well. There is no dispute in any of the findings of fact that I've indicated that indicates that they received anything remotely suggesting Ms. Denney's prior condition and therefore, they made in good faith a judgment as to her

underwriting—their underwriting requirements that did not include pertinent information. Are they bound to it?

"The question revolves around the obligations of their appointed agent."

The Department found that Denney was never given an application to review or sign and found that it was clear that she had not intentionally made an effort to defraud Golden Rule. With this in mind, the Department found that Golden Rule owed a duty to the insured:

"The contract, however, that I am interested in is the one between Ms. Denney and Golden Rule. Selling of insurance in the State of Kansas implies not only a fiduciary responsibility from the agent, but also one from the company. The company, by appointing an agent to represent them, has accepted the fiduciary responsibility of the agent and no contract between the company and the agent can abrogate the company's responsibility to the insured.

. . . .

"Therefore, because it is —it is binding and absent of the evidence of fraud, I can only indicate to Golden Rule that they are obligated to pay for the procedure in question both contractually and morally."

The Department then found Golden Rule to be in violation of K.S.A. 40-2404(9)(d) and (f). The Assistant Commissioner stated:

"It is uncomfortable for me to do so, because I do reiterate that Golden Rule, too, is a victim in this matter and therefore, it is hard to extrapolate a violation of the consumer unfair consumer practices. However, they've had ample opportunity in this regard."

Under the policy reasons for the ruling, the Department concluded: "Absent fraud by the consumer, companies are required to accept the representations of their appointed agents to prevent unjustified harm to consumers."

In finding that Golden Rule violated K.S.A. 40-2404(9)(d) and (f), both the Department and the district court focus on the essential issue of McClary's role and his relationship with Golden Rule and with Denney. Whose agent was he? We will address this issue first before determining whether we need to turn to the statutorily necessary predicate to Golden Rule's liability: conduct by Golden Rule which was flagrant and in conscious disregard of its duties or committed with such frequency as to indicate a general business practice.

*Was McClary the agent of Golden Rule?*

Golden Rule contends that McClary was acting as an independent broker representing Denney and not as an agent procuring insurance on Golden Rule's behalf. Golden Rule specifically points to its written agreement with McClary entitled "Independent Broker's Contract," which makes it clear that McClary was not an agent of Golden Rule.

What constitutes a principal/agent relationship and whether there is competent evidence reasonably tending to prove such a relationship is a question of law. However, resolution of conflicting evidence which might establish the existence of a principal/agent relationship is a question for the finder of fact. *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24 (1992).

The Department concluded that McClary was Golden Rule's agent. The Department made the sweeping declaration that "[n]o contract between the company and the agent can abrogate the company's responsibility to the insured." The district court also ruled that because Golden Rule appointed McClary as a soliciting agent, McClary's actions are imputed to and the responsibility of Golden Rule.

McClary's contract with Golden Rule, entitled "Independent Broker's Contract," authorized McClary to: (1) obtain and submit applications for insurance products to Golden Rule on behalf of persons for whom McClary is acting as a broker; and (2) collect initial premiums in exchange for official receipts furnished by Golden Rule. The agreement expressly states:

"**Independent Status.** *You* are an independent contractor relative to the *Company*. Although this *Contract* entitles *You* to submit applications to the *Company* on behalf of prospective *Clients*, *You* shall not represent to anyone that *You* act on behalf of the *Company*, except as expressly set forth in this *Contract*.

"Nothing contained in this *Contract*, or any written material or correspondence of the *Company*, shall be construed to create an employer-employee or principal-agent relationship between *You* and the *Company*. The parties recognize that:

"(a) Due to a particular state's licensing requirements, *You* may be appointed in that state as an 'agent'; and

"(b) From time to time the *Company* or others may refer to *You* as an 'agent.' These references may occur because of the general use of these words in everyday vocabulary.

"It is expressly intended and agreed that *You* are an independent contractor, acting as the agent of *Your Clients* and not as *Our* agent. *You* are free to exercise *Your* own judgment as to the time, place, and manner of dealing with *Your Clients* and potential *Clients.*"

Golden Rule asserts that its written agreement with McClary, which prohibits him from acting as an agent of Golden Rule or in any capacity except as an independent broker, does not establish any cognizable legal basis for holding Golden Rule responsible for McClary's acts or omissions. We agree. There is no evidence of an express principal/agent relationship between Golden Rule and McClary based on the Independent Broker's Contract.

Under the Uniform Insurance Agents Licensing Act, K.S.A. 2011 Supp. 40-4901 *et seq.*, a person must be licensed as an agent in order to sell, solicit, or negotiate insurance in Kansas. See K.S.A. 2011 Supp. 40-4905(a). Under the act, the term "broker" means "insurance agent." K.S.A. 2011 Supp. 40-4902(k). But the license is merely a regulatory permit. The issuance of a license does not define the agent's powers to bind an insurance company, nor does it change the general law of agency. *Eikelberger v. Insurance Co.*, 107 Kan. 9, 12, 190 P. 511 (1920). As the *Eikelberger* court noted, the license issued by the Insurance Department to a local insurance agent is "merely the state's permit for him to ply his business, and a tacit admission by the insurance superintendant that so far as he is advised the licensee is an honest man, or at least a man of fair business reputation." 107 Kan. at 11.

In Kansas, agency is:

"[A] contract, either express or implied, by which one of the parties confides to the other the management of some business to be transacted in the party's name, or on the party's account, and by which that other assumes to do the business and to render an account of it. Determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove the existence of agency is a question of law. An express agency exists if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. An implied agency may exist if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. *Professional Lens Plan, Inc. v. Polaris Leasing*

*Corp.*, 238 Kan. 384, Syl. ¶¶ 4, 5, 6, 7, 710 P.2d 1297 (1985).” *Barbara Oil*, 250 Kan. at 446.

It has long been the law of this state that agency must be established by some action of the principal, not merely based on acts or representations of the claimed agent. As stated in *Wilcox v. Eadie*, 65 Kan. 459, 463, 70 P. 338 (1902) (quoting Mechem on Agency, § 276 [1889]):

“ ‘As has been seen, the law indulges in no bare presumptions that an agency exists; it must be proved or presumed from facts; that the agent cannot establish his own authority, either by his representations or by assuming to exercise it; that an authority cannot be established by mere rumor or general reputation; that even a general authority is not an unlimited one, and that every authority must find its ultimate source in some act of the principal. Persons dealing with an assumed agent, therefore, whether the assumed agency be a general or special one, are bound, at their peril, to ascertain not only the fact of the agency but the extent of authority, and in case either is controverted, the burden of proof is upon them to establish it.’ ”

Generally, a broker or agent who is employed to procure insurance becomes the agent of the person for whom the insurance is procured. “There are many exceptions to the rule, however, and the question cannot be answered absolutely, but depends on the circumstances of the particular case. For some purposes and under certain circumstances, a broker may represent either the insured or insurer, or both. [Citation omitted.]” *Stamps v. Consolidated Underwriters*, 205 Kan. 187, 197, 468 P.2d 84 (1970). The court in *Stamps* did not resolve the agency question because the insurer had agreed at trial that Kimple, the agent, was the company’s agent and neither party had explored the scope of Kimple’s agency or his authority. The court did note, however, that “[f]rom the brief testimony on the point it appears that Kimple was licensed with Consolidated and with a number of other insurers which probably establishes him as an independent agent or broker.” 205 Kan. at 197.

Here, the Department found that McClary was an agent of Golden Rule. Thus, it is our duty to ensure that the evidence that supports this finding is substantial when viewed “in light of the record as a whole,” K.S.A. 2011 Supp. 77-621(c)(7) and (d), and to determine de novo whether the legal conclusion that a principal/

agent relationship exists properly flows from those established facts.

The Department's findings of fact are rather confounding. In its written Final Order the Department found that Denney "was ignorant of the health insurance market and she was not assisted appropriately by *her* agent." (Emphasis added.) Then, the Department declared that "[t]he agent was appointed by Golden Rule" and "actions of agents in Kansas bind their insurance companies." With respect to the scope of the agency, the Department found that "[a]n insurance company which appoints an agent accepts the fiduciary responsibility of the agent and no contract between the company and its appointed agent can abrogate the company's responsibility to the insured," thereby apparently rendering the contract between the claimed principal and agent entirely immaterial. The Department does not explain whether the agency relationship it found between McClary and Golden Rule was express or implied. If express, the only thing it points to is the fact that McClary was licensed by the state and his license indicated he sold policies issued by a number of companies, including Golden Rule. (We disposed of this issue earlier.) If implied, there is no finding of fact that we can identify in support of this theory.

Here, the written contract between Golden Rule and McClary expressly limited McClary's role with Golden Rule. It explicitly provided that McClary was authorized only to "obtain and submit applications" and that he was "acting as a broker." The contract indicated that McClary was not its express agent, and we find no evidence in the record to the contrary.

In a more measured tone, the district court affirmed the decision of the Department by predicating liability on the existence of an implied rather than express agency. The court recognized the proposition in *Barbara Oil*, 250 Kan. at 448, that "[a]n agency will not be inferred because a third person assumed that it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable." The district court concluded that "there must be some circumstances which lead to an inference that Golden Rule imputed more authority to Mr. McClary than was

included in the [independent broker's contract]." But the district court does not identify the specific facts by which a principal/agent relationship is implied. Rather, the court relies on the notion that McClary was a "soliciting agent" as described in *Earth Scientists v. United States Fidelity & Guar.*, 619 F. Supp. 1465 (D. Kan. 1985), in order to impute McClary's conduct to Golden Rule. We will discuss *Earth Scientists* further below.

If McClary is an agent of Golden Rule, Kansas caselaw clearly provides that Golden Rule is bound by his failure to correctly fill out Denney's application for insurance. This principle is consistent with the holdings in a number of cases relating to different aspects of the principal/agent relationship in the insurance business. See *Chism v. Protective Life Ins. Co.*, 290 Kan. 645, 660-61, 234 P.3d 780 (2010); *Schneider v. Washington National Ins. Co.*, 200 Kan. 380, 437 P.2d 798 (1968); *Cooley v. National Life & Acc. Ins. Co.*, 172 Kan. 10, 238 P.2d 526 (1951); *Stewart v. Commonwealth Casualty Co.* 137 Kan. 919, 22 P.2d 435 (1933); *Shinn v. Benefit Association*, 102 Kan. 134, 169 P. 215 (1917); *cf. Iowa National Mutual Ins. Co. v. City of Osawatomie*, 458 F.2d 1124 (10th Cir. 1972). These are all cases cited and relied upon by the district court. We find it interesting that in none of these cases was agency at issue. In each case, upon close examination, the insurance company conceded that the insurance agent in question was the company's agent.

But the nub of the district court's holding is its conclusion that McClary was a soliciting agent as defined in *Earth Scientists*. In that case, the court denied summary judgment because there remained a genuine issue of fact as to whether the defendant fraudulently induced the plaintiff to purchase the policy. The defendant argued that it could not be held liable for the acts of agent Kinnard because he was merely defendant's soliciting agent. Thus, the insurance company admitted that insurance agent Kinnard was its agent in procuring the policy. Further, there was evidence that the defendant agreed to indemnify Kinnard against any liability cause by the company. 619 F. Supp. at 1467, 1472-73.

The court in *Earth Scientists*, 619 F. Supp. at 1472, recognized the holding in *Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan.

415, 421-22, 243 P. 1023 (1926), that an independent broker is the agent of the proposed insured rather than the insurer for the purpose of obtaining an insurance policy. The court in *Rosedale* declared that an insurance broker is one "who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the [proposed] insured, or, in the absence of any selection by him, then with the company selected by such broker." 120 Kan. 415, Syl. ¶ 1. An insurer is not responsible for the actions of an independent broker. The court in *Earth Scientists* distinguished *Rosedale* by stating:

"*Rosedale* deals only with independent brokers and not soliciting agents. It holds that an *independent broker* is the agent of the insured rather than the insurer for the purpose of obtaining the policy. *Id.* at 421-22, 243 P. at 1026. Thus, an insurer may not be held liable for any representations made by the broker. *Rosedale* defines an insurance broker as 'one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the [proposed] insured or, in the absence of any selection by him, then with the company selected by such broker.' 120 Kan. at 415, Syl. ¶ 1, 243 P. at 1023.

"A *soliciting agent*, on the other hand, is defined as one who takes applications for insurance, forwards them to the company that issued the policy, collects the premiums and delivers the policies to the insured. *Pettijohn v. The Saint Paul Fire and Marine Ins. Co.*, 100 Kan. 482, 485, 164 P. 1096, 1097 (1917)." *Earth Scientists*, 619 F. Supp. at 1472.

The notion of a "soliciting agent" involves much more than the *Earth Scientists* court acknowledged. In *Pettijohn v. Insurance Co.*, 100 Kan. 482, 164 P. 1096 (1917), the source of the district court's notion of a soliciting agent, the soliciting agent in question was William Weikert.

"Weikert was the representative of defendant at Norton through whom plaintiff had procured his policy. . . . It appears that Weikert had been the agent of defendant at Norton for twelve or thirteen years, that he took applications for insurance and adjusted losses on farm property, and he had authority to issue certain kinds of policies on city property. His territory extended from Salina to the Colorado line. . . .

". . . He was recording agent for the insurance of city property, and for a number of years had acted for the company in adjusting losses in a large district." *Pettijohn*, 100 Kan. at 483-84.

There is no evidence that McClary had a relationship with Golden Rule anywhere near resembling the relationship between Weikert and St. Paul Fire & Marine Insurance Co. There is no evidence that McClary was Golden Rule's designated representative in Denney's community. There is no evidence that McClary had a designated territory within which he could solicit business for Golden Rule. There is no evidence that McClary had the authority to issue policies on behalf of Golden Rule or adjust loss claims made by Golden Rule's insureds.

McClary's relationship with Golden Rule follows the model described in *Rosedale*, not the models in *Earth Scientists* and *Pettijohn*. The description of the insurance broker in *Rosedale* fits McClary to a T: one "who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance company selected by the [proposed] insured, or, in the absence of any selection by him, then with the company selected by such broker." 120 Kan. 415, Syl. ¶ 1. An insurer is not responsible for the actions of an independent broker, such as the broker found in *Rosedale* and McClary in the case now before us.

McClary first attempted to obtain coverage for Denney from Assurant Health, a competitor of Golden Rule in the health insurance market. But Time Insurance Company, the carrier to whom Assurant Health referred Denney's application for underwriting, rejected Denney's application. Upon learning of the rejection, whom did McClary consult about what he should do next in attempting to obtain coverage for Denney? He consulted with Denney. McClary was an independent insurance broker who had access to several insurers that wrote health insurance policies in Kansas. His recommendation and ultimate selection of Golden Rule did not alter the fact that in doing so he was acting on behalf of Denney, not on behalf of Golden Rule. We find no evidence that McClary was employed solely as a captive agent or as a soliciting agent of Golden Rule.

The evidence in the record does not support the Department's finding that McClary was acting as Golden Rule's agent. We hold, in light of all of the evidence examined under the standard stated

in K.S.A. 2011 Supp. 77-621(c)(7) and (d), that McClary was acting as an independent broker and, in this transaction, was the agent of Denney, not the agent of Golden Rule. Thus, Golden Rule was not responsible for McClary's acts and omissions.

Upon learning that Denney's health information was not accurately represented on the application submitted by her agent, Golden Rule initiated a prompt and reasonable investigation from January 2008 to April 2008. With this determination, we need not consider further the district court's conclusion that "Golden Rule's actions were either 'committed flagrantly and in conscious disregard' of the statutes in question, or 'committed with such frequency as to indicate a general business practice.' "

We conclude that Golden Rule did not engage in unfair claim settlement practices in violation of K.S.A. 40-2404(9)(d) by refusing to pay Denney's claim without conducting a reasonable investigation and K.S.A. 40-2404(9)(f) by failing to make a good-faith effort to effectuate a prompt, fair, and equitable settlement of Denney's claim after liability became reasonably clear. Accordingly, we reverse the district court's order upholding the Department's finding that Golden Rule violated K.S.A. 40-2404(9)(d) and (f).

Golden Rule also challenges the rulings by the Department and the district court that it was required to make a predetermination of coverage under the plain language of the insurance policy. McClary failed to accurately report Denney's medical history in the policy application. Neither Denney nor Golden Rule was complicit in this failure to disclose. Nevertheless, in failing to accurately report Denney's medical history, we have determined that McClary was acting as Denney's agent at the time. Thus, Golden Rule was entitled to exclude coverage for Denney's anticipated surgery, and the issue whether Golden Rule should have predetermined that Denney had coverage becomes moot. Accordingly, we will not address this claim of error.

Reversed.