IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,245

GOLDEN RULE INSURANCE COMPANY,
*Appellant*,

v.

ROBERT M. TOMLINSON, in his official capacity as the
Assistant Commissioner of Insurance of the State of Kansas acting on
behalf of the Commissioner of Insurance of the State of Kansas,
and the KANSAS INSURANCE DEPARTMENT,
*Appellees*.

SYLLABUS BY THE COURT

1.

The Kansas Judicial Review Act, K.S.A. 77-601 *et seq.*, establishes the standard of review for appeals from state administrative agency decisions, and K.S.A. 2013 Supp. 77-621(c) enumerates eight circumstances in which a court shall grant relief. On the facts of this case, two subsections of the statute are potentially relevant:  that involving misinterpretation or misapplication of the law and that involving lack of evidence to support factual determinations that is substantial when viewed in light of the record as a whole. The party asserting the invalidity of an agency's action bears the burden of proving invalidity.

2.

What constitutes agency and whether there is competent evidence reasonably tending to prove the relationship is a question of law. Resolution of conflicting evidence that might establish the existence of a principal-agent relationship is for the finder of fact. The province of an appellate court is to determine if the record reveals evidence on which

1

a finding of agency could be based, not to decide whether, under proper instructions relating to the law of principal and agent, it existed as a matter of fact.

3.

The nature and scope of an agent's authority and the inclusion within the scope of that authority of a particular act are ordinarily questions to be determined by the trier of facts in accordance with the evidence adduced in the particular case.

4.

Statutory interpretation is subject to unlimited review on appeal. No deference is paid to an agency's statutory interpretation.

5.

Agency is the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. A person manifests assent or intention through written or spoken words or other conduct.

6.

The common law of agency recognizes three distinct bases on which the legal consequences of the agent's action are attributable to the principal—actual authority, apparent authority, and respondeat superior.

7.

An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act. An

agent's actual authority can either be express, *i.e.*, stated in very specific or detailed language, or implied, *i.e.*, actual authority either (1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent.

8.

In this review of Kansas Insurance Department and district court decisions on whether a principal-agent relationship existed and whether the alleged agent could bind the alleged principal insurance company, we hold that the Court of Appeals erred by expanding the legal definition of soliciting agent, misapplying the legal definition of broker, and failing to recognize that evidence to support the Department's factual determinations was substantial when viewed in light of the record as a whole. We therefore affirm the Department and the district court determinations that a principal-agent relationship existed and that the insurance company was bound by the action of its agent.

9.

There was substantial evidence in this case, when viewed in light of the record as a whole, to support the Kansas Insurance Department's determination that the insurance company violated K.S.A. 2013 Supp. 40-2404(9)(d) by refusing to pay claims without conducting a reasonable investigation based upon all available information. There was not substantial evidence in this case, when viewed in light of the record as a whole, to support the Department's determination that the insurance company violated K.S.A. 2013 Supp. 40-2404(9)(f) by not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

10.

The Kansas Insurance Department's remedy, affirmed by the district court, was authorized and appropriate under K.S.A. 40-2407(a)(3).

Review of the judgment of the Court of Appeals in 47 Kan. App. 2d 408, 277 P.3d 421 (2012). Appeal from Shawnee District Court; CHARLES E. ANDREWS, JR., judge. Opinion filed October 24, 2014. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court and decision by the Kansas Insurance Department is affirmed in part and reversed in part.

*Kevin M. Fowler*, of Frieden, Unrein & Forbes, LLP, of Topeka, argued the cause and was on the briefs for appellant.

*Amy E. Morgan*, of Polsinelli PC, of Overland Park, argued the cause, and *Susan Ellmaker* and *Brenda J. Clary*, of Kansas Insurance Department, were with her on the briefs for appellees.

The opinion of the court was delivered by

BEIER, J.: This case arises out of a Kansas Insurance Department decision imposing sanctions on appellant Golden Rule Insurance Company for unfair claim settlement practices. The Department's final order was upheld in district court. Then, on appeal to our Court of Appeals, the panel reversed. We accepted a petition for review filed by appellees, Assistant Commissioner of Insurance Robert M. Tomlinson and the Department.

Although the underlying facts in this case are undisputed, the Court of Appeals' conclusion that Dirk McClary was not acting as Golden Rule's soliciting agent when he submitted an application for health insurance that failed to disclose proposed insured Patti Denney's preexisting condition is not inevitable under the governing law. We reverse the Court of Appeals' decision on the agency question. On the further issue of whether

Golden Rule engaged in unfair claim settlement practices, we affirm in part and reverse in part the district court's judgment, which means that we also affirm in part and reverse in part the Department's order. We affirm the remedy granted to Denney by the district court and the Department.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court of Appeals' opinion effectively captures the facts of this case as well as its lengthy and somewhat unusual procedural history. The parties do not take issue with the panel's summary; we therefore adopt the summary for purposes of our decision.

"Denney and her husband, both self-employed, had family health insurance coverage through an individual policy with Blue Cross and Blue Shield of Kansas City (Blue Cross). The coverage was expensive, and Denney began looking for a more affordable policy.

"Apparently based upon her inquiries into alternative coverage, Denney's name appeared on a list of insurance prospects maintained by Design Benefits, an independent insurance brokerage firm in Wichita. Design Benefits gave Denney's name to McClary, a Kansas licensed insurance agent who officed in Overland Park, as somebody who might be interested in buying health insurance. McClary contacted Denney.

"McClary was affiliated with Design Benefits as well as another Kansas independent brokerage firm named Hosfield. He was also affiliated with USA Benefits Group, which changed its name to America's Health Care Plan, a brokerage firm located in Illinois that is licensed in Kansas and markets insurance products of Golden Rule. These brokerage firms apparently had contracts with various insurance companies to market their insurance products in Kansas.

"McClary was not a captive agent of Golden Rule; that is, he was not an employee of Golden Rule soliciting business solely for that company. McClary submitted

5

applications for health insurance policies to several insurance companies doing business in Kansas that competed with one another for insurance business. McClary's contract with Golden Rule was entitled an 'Independent Broker's Contract,' and it clearly stated that McClary was not an agent of Golden Rule.

"During September 2007, Denney met with McClary in [Denney's] office to discuss Denney's insurance coverage options. [McClary] gave Denney his business card[,] which indicated he was affiliated with USA Benefits but made no reference to Golden Rule. Two of Denney's employees, JoAnn Combs and Jodi Davis, were present during the meeting because they were also interested in securing new insurance policies. Davis testified that she believed that McClary was representing Golden Rule because McClary held himself out as its representative. Combs also believed that McClary represented Golden Rule. McClary testified that he did not take the time to explain his agency agreement to Denney. McClary referred to himself as an agent rather than a broker. McClary confirmed that he received a commission from Golden Rule for obtaining Denney's medical policy. Denney did not know the difference between an agent and a broker, and she 'placed her faith' in McClary and the information he was providing to her.

"Denney had a history of surgeries and procedures relating to digestive issues. Denney informed McClary of her medical condition and her previous surgeries because she did not want to risk losing health insurance for her family. Combs confirmed that Denney told McClary about th[is] medical condition[] at the beginning of the meeting. Denney told McClary the dates of her previous surgeries, including the fact that she had hernia surgery in the previous 6 months.

"McClary first submitted Denney's application, disclosing her digestive condition[], to Assurant Health, a company that sells insurance products that are underwritten by the Time Insurance Company. Denney's application did not receive favorable consideration, so McClary contacted Denney by phone and received her authorization to submit an application on her behalf to another insurance company, Golden Rule, based on the information that she had previously provided to him. Golden Rule is a competitor of Assurant Health and Time Insurance Company, and these two

companies are not affiliated in any way with Golden Rule. Denney testified that McClary told her 'not to worry' because Golden Rule would go back only 90 days into her medical history. McClary denied making any such assurance.

"The application McClary submitted to Golden Rule did not disclose Denney's preexisting medical condition. Denney did not have the opportunity to review or sign the Golden Rule application before its submission. McClary could not explain why Denney's information was not accurately reported to Golden Rule except to say that he made a mistake.

"Denney did not review the application prior to its submission because McClary received her consent to submit the application over the phone. However, the application contained a section immediately above the electronic signatures entitled 'STATEMENT OF UNDERSTANDING' that instructs the applicants to '[r]eview the completed application and read the section below carefully before signing.' The section states:

> "'I certify that I have personally completed this application. I represent that the answers and statements on this application are true, complete, and correctly recorded. I Understand and Agree that: (1) this application and the payment of the initial premium do not give me immediate coverage; (2) there will be no benefits for any loss incurred in the first year of coverage due to a preexisting condition; (3) incorrect or incomplete information on this application may result in voidance of coverage or claim denial; (4) this completed application, and any supplements or amendments, will be made a part of any policy which may be issued; (5) the broker is only authorized to submit the application and initial premium, and may not change or waive any right or requirement; and (6) continuation of other coverage existing on the Golden Rule effective date for more than 90 days after the Golden Rule effective date will void this coverage.'

"The application also contains a section entitled 'BROKER STATEMENT' that directs the broker to '[r]eview the completed application before signing below.' Directly

7

above McClary's electronic signature, it states that '[e]ach question on the application was completed by the applicant(s).' Of course this did not happen.

"On October 13, 2007, Golden Rule issued a policy covering Denney and her family members. Denney then cancelled her policy with Blue Cross.

"In January 2008, Denney's physician, Dr. Mark Strehlow, sent a letter to Golden Rule requesting advance approval of coverage under the policy for surgery for Denney. Strehlow's letter stated that Denney had an extensive medical history related to various digestive conditions. Strehlow said that Denney was scheduled to undergo 'abdominal reconstructive surgery.' Strehlow later testified that Golden Rule denied payment for the procedure, and he immediately requested that Golden Rule reconsider. Strehlow told Golden Rule that Denney was experiencing a number of gastric problems and she 'certainly does not feel she can wait three to six months to have this procedure done.' Golden Rule denied that it rejected Strehlow's request and claims that it simply took the matter under advisement pending further investigation.

"From late January 2008 into April 2008, Golden Rule conducted an investigation into Denney's medical history and her application for insurance. Golden Rule requested more information regarding Denney's medical history from Denney's various physicians.

"On April 28, 2008, Golden Rule denied coverage for Denney's proposed surgery based on the fact that the conditions documented in Denney's medical records were not disclosed in her application for insurance. Golden Rule stated that if Denney's medical history had been accurately disclosed, Golden Rule's offer of insurance would have contained a rider that excluded all coverage for digestive system diseases or disorders. Golden Rule informed Denney that 'we need to take the same action we would have taken if we had been aware of this information when you applied for insurance.' Golden Rule offered to keep the policy in force but exclude coverage for any digestive system problems. When Denney refused to accept the exclusionary rider, Golden Rule cancelled the policy.

8

"On May 5, 2008, Denney filed a complaint with the Department based on Golden Rule's refusal to provide coverage for treatment of her preexisting medical condition. Denney asserted that McClary misrepresented how far back Golden Rule would examine her medical history.

"Responding to the complaint, McClary denied knowledge of Denney's medical conditions with the exception of a hernia repair in July 2007. McClary stated that he was 'astonished to learn' that the information regarding Denney's hernia repair was not accurately represented on the application for insurance that he filled out on Denney's behalf. Golden Rule asserted that McClary was an independent insurance broker and not Golden Rule's agent.

"On August 13, 2008, the Department issued an ex parte emergency order finding that Golden Rule had violated K.S.A. 40-2404(9)(d), (f) and (i), which regulate unfair claim settlement practices in the business of insurance. The emergency order stated that Golden Rule had wrongfully denied Denney coverage for a medically necessary procedure and ordered Golden Rule to pay Denney's claim.

"On August 26, 2008, the Department filed an action in the district court seeking civil enforcement of the emergency order. But the district court determined that the evidence did not establish an emergency and stayed the emergency order pending final disposition of the claims against Golden Rule. The district court ultimately remanded the matter to the Department for an administrative hearing.

"At the administrative hearing on February 19, 2009, McClary testified that he initially submitted Denney's application for insurance to Assurant Health. After learning that Assurant Health would not issue Denney a policy, McClary withdrew the application. He then called Denney and requested permission to submit her application to Golden Rule based on the information that she had previously provided to him. Denney agreed to McClary's plan to submit her application to Golden Rule, but the application submitted on her behalf did not disclose her medical condition or past surgery. McClary testified that the omission was unintentional and claimed that he must have made a mistake. Denney testified to her dealings with McClary and her belief that he was acting

9

as an agent for Golden Rule. She acknowledged that all the representations about McClary's status came from 'the words out of his mouth' and not from anything Golden Rule had provided to enable McClary to make the sale.

"On May 28, 2009, the Assistant Commissioner of Insurance . . . orally announced his decision, finding that Golden Rule had violated K.S.A. 40-2404(9)(d) and (f) but not K.S.A. 40-2404(9)(i). The Assistant Commissioner concluded that Golden Rule should pay for the reconstructive surgery as well as for Denney's future medical services. The Department entered its order on September 3, 2009.

"On September 28, 2009, Golden Rule filed a petition for reconsideration pursuant to K.S.A. 77-529(a)(1). Golden Rule argued there was insufficient evidence to establish any unfair claim settlement practice. Following a hearing on October 15, 2009, the Department denied Golden Rule's motion for reconsideration and issued its final order.

"Golden Rule then filed a petition for judicial review under the Kansas Judicial Review Act (KJRA), K.S.A. 2011 Supp. 77-601 *et. seq.* On July 16, 2010, the district court affirmed the Department's final order and ruled that Golden Rule violated K.S.A. 40-2404(9)(d) and (f) of the Kansas unfair trade practices law. Golden Rule's subsequent motion to alter or amend the memorandum decision was denied, and Golden Rule appealed to [the Court of Appeals]."

Before the Court of Appeals, Golden Rule continued to assert that McClary was an independent broker who represented Denney. Relying on the Uniform Insurance Agents Licensing Act, K.S.A. 2013 Supp. 40-4901 *et seq.*, and caselaw, the Department maintained that McClary was Golden Rule's agent.

The Court of Appeals rejected the Department's licensing argument, concluding that "[t]he issuance of a license does not define an agent's powers to bind an insurance company, nor does it change the general law of agency." *Golden Rule Ins. Co. v.*

*Tomlinson*, 47 Kan. App. 2d 408, 422, 277 P.3d 421 (2012). Then, turning to the common law, the panel stated that a broker employed to procure insurance generally becomes the agent of the person for whom the insurance is procured. 47 Kan. App. 2d at 423. It disapproved of the district court's reliance "on the notion that McClary was a 'soliciting agent' as described in" *Earth Scientists v. United States Fidelity & Guar.*, 619 F. Supp. 1465 (D. Kan. 1985), and it discussed caselaw defining brokers and soliciting agents. *Golden Rule*, 47 Kan. App. 2d at 425-27.

> "*Earth Scientists*, 619 F. Supp. at 1472, recognized the holding in *Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan. 415, 421-22, 243 P. 1023 (1926), that an independent broker is the agent of the proposed insured rather than the insurer for the purpose of obtaining an insurance policy. The court in *Rosedale* declared that an insurance broker is one 'who solicits contracts from the public under no employment by any special company, but, having secured an order, places the insurance with a company selected by the [proposed] insured, or, in the absence of any selection by him, then with the company selected by such broker.' 120 Kan. 415, Syl. ¶ 1. An insurer is not responsible for the actions of an independent broker. The court in *Earth Scientists* distinguished *Rosedale* by stating:
>
>> "'*Rosedale* deals only with independent brokers and not soliciting agents. It holds that an independent broker is the agent of the insured rather than the insurer for the purpose of obtaining the policy. *Id.* at 421-22, 243 P. at 1026. Thus, an insurer may not be held liable for any representations made by the broker. *Rosedale* defines an insurance broker as "one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the [proposed] insured or, in the absence of any selection by him, then with the company selected by such broker." 120 Kan. at 415, Syl. ¶ 1, 243 P. at 1023.'
>>
>> "'A soliciting agent, on the other hand, is defined as one who takes applications for insurance, forwards them to the company that

11

issued the policy, collects the premiums and delivers the policies to the insured. *Pettijohn v. The Saint Paul Fire and Marine Ins. Co.*, 100 Kan. 482, 485, 164 P. 1096, 1097 (1917).' *Earth Scientists*, 619 F. Supp. at 1472.

"The notion of a 'soliciting agent' involves much more than the *Earth Scientists* court acknowledged. In *Pettijohn v. Insurance Co.*, 100 Kan. 482, 164 P. 1096 (1917), the source of the district court's notion of a soliciting agent, the soliciting agent in question was William Weikert.

"'Weikert was the representative of defendant [St. Paul Fire & Marine Insurance Co.] at Norton through whom plaintiff had procured his policy. . . . It appears that Weikert had been the agent of defendant at Norton for twelve or thirteen years, that he took applications for insurance and adjusted losses on farm property, and he had authority to issue certain kinds of policies on city property. His territory extended from Salina to the Colorado line. . . .

"'. . . He was recording agent for the insurance of city property, and for a number of years had acted for the company in adjusting losses in a large district.' *Pettijohn*, 100 Kan. at 483-84.

"There is no evidence that McClary had a relationship with Golden Rule anywhere near resembling the relationship between Weikert and St. Paul Fire & Marine Insurance Co. There is no evidence that McClary was Golden Rule's designated representative in Denney's community. There is no evidence that McClary had a designated territory within which he could solicit business for Golden Rule. There is no evidence that McClary had the authority to issue policies on behalf of Golden Rule or adjust loss claims made by Golden Rule's insureds." *Golden Rule*, 47 Kan. App. 2d at 425-27.

The panel concluded that "[t]he description of the insurance broker in *Rosedale* fits McClary to a T." 47 Kan. App. 2d at 427.

"McClary first attempted to obtain coverage for Denney from Assurant Health, a competitor of Golden Rule in the health insurance market. But Time Insurance Company, the carrier to whom Assurant Health referred Denney's application for underwriting, rejected Denney's application. Upon learning of the rejection, whom did McClary consult about what he should do next in attempting to obtain coverage for Denney? He consulted with Denney. McClary was an independent insurance broker who had access to several insurers that wrote health insurance policies in Kansas. His recommendation and ultimate selection of Golden Rule did not alter the fact that in doing so he was acting on behalf of Denney, not on behalf of Golden Rule. We find no evidence that McClary was employed solely as a captive agent or as a soliciting agent of Golden Rule." 47 Kan. App. 2d at 427.

Because McClary was viewed as an independent broker rather than Golden Rule's agent, the panel held that Golden Rule was not responsible for McClary's omissions on Denney's application. The panel thus summarily rejected the Department's argument that Golden Rule committed unfair claim settlement practices in its dealings with Denney, noting that Golden Rule "initiated a prompt and reasonable investigation from January 2008 to April 2008." 47 Kan. App. 2d at 428.

DISCUSSION

In order to decide whether Denney and thus the Department can bind Golden Rule through the acts of McClary, we must first decide whether the evidence before the Department supported the existence of an agency relationship between Golden Rule as principal and McClary as agent. Next, we must decide whether McClary's acts were within the scope of his authority as agent or were otherwise binding on Golden Rule. If McClary's acts were within the scope of his authority or were otherwise binding on the

13

company, then we move to examination of the Department's decision on the merits of the alleged statutory violations by Golden Rule and the appropriateness of the remedy it ordered.

The Court of Appeals, because it ruled that no agency relationship between Golden Rule and McClary existed, did not directly determine the scope of McClary's authority. It was prompted in the direction it took by the common law and statutory arguments advanced by the parties, which focused on the relationship question alone—specifically, whether McClary was a soliciting agent or an insurance broker, terms that we will define and discuss in more detail below. This focus was understandable, given some historical imprecision in Kansas agency law, particularly as articulated and applied in insurance cases. In this opinion, on the way to resolving the parties' particular dispute, we attempt to improve upon the clarity of Kansas agency law.

*Standards of Review*

We begin with a statement of the applicable standards of review.

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, establishes the standard of review for appeals from state administrative agency decisions. It enumerates eight circumstances in which a court shall grant relief. K.S.A. 2013 Supp. 77-621(c). Golden Rule, as the party asserting the invalidity of an agency's action, bears the burden of proving invalidity. K.S.A. 2013 Supp. 77-621(a)(1). Although Golden Rule sets forth the eight circumstances enumerated in K.S.A. 2013 Supp. 77-621(c), it fails to specify which provision or provisions should lead to the appellate relief it seeks.

For its part, the Court of Appeals, in *Golden Rule*, 47 Kan. App. 2d at 416, identified three "relevant" subsections in K.S.A. 2013 Supp. 77-621(c):

14

"'(4) the agency has erroneously interpreted or applied the law;

. . . .

'(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

'(8) the agency action is otherwise unreasonable, arbitrary or capricious.'"

We focus on the first two of these three subsections.

The legislature's use of the phrase "in light of the record as a whole" in subsection (7) of K.S.A. 2013 Supp. 77-621(c) means that we must review evidence both supporting and contradicting the agency's findings; examine the presiding officer's credibility determination, if any; and review the agency's explanation as to why the evidence supports its findings. K.S.A. 2013 Supp. 77-621(d); *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010). While conducting this analysis, the court does not reweigh the evidence or engage in de novo review. K.S.A. 2013 Supp. 77-621(d).

In *Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 446-47, 827 P.2d 24 (1992), this court explained:

"What constitutes agency and whether there is competent evidence reasonably tending to prove the relationship is a question of law. Although what constitutes agency is a question of law, resolution of conflicting evidence which might establish its existence is for the finder of fact. *Aetna Casualty and Surety Co. v. Hepler State Bank*, 6 Kan. App. 2d 543, 548, 630 P.2d 721 (1981). The weight to be given evidence and resolution of conflicts therein are functions of the trier of facts in the determination of whether there is a relationship of principal and agent. Where the existence of agency is disputed, its existence or nonexistence is ordinarily a question of fact for the jury, to be determined upon proper instructions. *CIT Financial Services, Inc. v. Gott*, 5 Kan. App. 2d 224, 229-30, 615 P.2d 774, *rev. denied* 228 Kan. 806 (1980). 'The province of an appellate court is

15

to determine if the record reveals evidence on which a finding of agency could be based, not to decide whether, under proper instructions relating to the law of principal and agent, it existed as a matter of fact.' *Traylor v. Wachter*, 3 Kan. App. 2d 536, Syl. ¶ 2, 598 P.2d 1061 (1979), *aff'd in part, rev'd in part* 227 Kan. 221, 607 P.2d 1094 (1980)."

The nature and scope of an agent's authority and the inclusion within the scope of that authority of a particular act are ordinarily questions to be determined by the "'trier of facts in accordance with the evidence adduced in the particular case.'" *Citibank, N.A. v. Data Lease Financial Corp.*, 828 F.2d 686, 691 (11th Cir. 1987).

One further standard of review has bearing on resolution of this case: Statutory interpretation is subject to unlimited review on appeal. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010) (reviewing agency action under KJRA). No deference is paid to an agency's statutory interpretation. 290 Kan. at 567. Rather,

> "[t]he intent of the legislature, if ascertainable, governs the interpretation of statutes. This court presumes that the legislature expressed its intent through the language of the statutory scheme, and, if a statute is plain and unambiguous, this court will neither speculate regarding the legislative intent nor read into the statute something that is not readily found in it. When the meaning of a statute is ambiguous, this court may turn to legislative history, canons of construction, and other background considerations to construe the intent of the legislature." *Hays v. Ruther*, 298 Kan. 402, 404-05, 313 P.3d 782 (2013).

*General Common Law Agency Principles*

Because the Department depends upon common law for one of its alternative arguments for the existence of a principal-agent relationship between Golden Rule and McClary in this case, a brief review of general common law agency principles provides helpful context.

The Third Restatement of Agency, published in 2006, defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2005); see *Sullivan v. Finch*, 140 Kan. 399, 404, 36 P.2d 1023 (1934) (defining agency in similar terms; citing Restatement [First] of Agency § 1 [1933]). Although "manifestation" was not defined in either the First or Second Restatement, the Third Restatement defines it as follows:  "A person manifests assent or intention through written or spoken words or other conduct." Restatement (Third) of Agency § 1.03 (2005). "Agency encompasses a wide and diverse range of relationships and circumstances." Restatement (Third) of Agency § 1.01, comment c; see also 2A C.J.S., Agency § 3 ("Agency is a comprehensive term which, in its broadest sense, includes every relationship in which one person acts for or represents another by his or her authority.").

The common law of agency recognizes three distinct bases on which the legal consequences of the agent's action are attributable to the principal—actual authority, apparent authority, and respondeat superior. Restatement (Third) of Agency, ch. 2 Introductory Note at 79 (2005).

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2005). An agent's actual authority can either be express, *i.e.*, "stated in very specific or detailed language," or implied, *i.e.*,

"actual authority either (1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent." Restatement (Third) of Agency § 2.01, comment b.

See 2A C.J.S., Agency § 139.

In contrast, "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (2005). Apparent authority "does not presuppose the present or prior existence of an agency relationship." Restatement (Third) of Agency § 2.03, comment a. Thus, an actor who appears to be an agent but is not may nevertheless bind a principal in certain instances. Similarly, agents with actual authority who act beyond the scope of their authority may also bind a principal under the doctrine of apparent authority. Whether an actor or an agent, a principal's liability requires that the third party reasonably believe the agent to be authorized and that such belief be traceable to a manifestation of the principal. Unlike an agent acting with actual authority, an actor or agent with apparent authority may be liable to a principal for any loss incurred. Restatement (Third) of Agency § 2.03, comment a.

Respondeat superior assigns liability to an employer for the torts committed by its employees while acting within the scope of their employment. Restatement (Third) of Agency § 2.04 (2005).

Accordingly, any agency analysis begins by first identifying whether a principal-agent relationship exists and, if so, determining the nature and scope of the agent's authority. If no principal-agent relationship exists or an agent has acted outside of his or

18

her actual authority, the inquiry moves to whether the actor or agent had apparent authority to act.

*Kansas Common Law Agency Principles*

Kansas caselaw has been consistent with the general common law agency principles outlined above in substance if not always in form. A notable difference between Kansas cases and the Restatements is our jurisdiction's focus on "types of agencies" rather than types of authority.

For example, in *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, this court stated:

> "'The law recognizes two distinct *types of agencies*, one actual and the other ostensible or apparent. The authority of an actual agent may be either express or implied. [Citation omitted.]
>
> "'It is an *express agency* if the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act. It is an *implied agency* if it appears from the statements and conduct of the parties and other relevant circumstances that the intention was to clothe the agent with such an appearance of authority that when the agency was exercised it would normally and naturally lead others to rely on the person's acts as being authorized by the principal. An *ostensible or apparent agency* may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred upon the agent.'" (Emphasis added.) *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390-91, 710 P.2d 1297 (1985) (quoting *Shawnee State Bank v. North Olathe Industrial Park, Inc.*, 228 Kan. 231, 236-37, 613 P.2d 1342 [1980]).

This court's statements in *Professional Lens Plan, Inc.* had their genesis in much older caselaw, which in turn relied on then current statements of agency law made in various treatises. See, *e.g.*, *Greep v. Bruns*, 160 Kan. 48, 54-56, 159 P.2d 803 (1945) (citing 1 Mechem on Agency, 2d ed.; 2 C.J.S., Agency; and 2 Am. Jur., Agency, to describe basic agency principles).

The most notable distinction between the terminology of our caselaw and that employed by the Third Restatement of Agency is that our terminology often identifies types of agencies based on the actor's or agent's type of authority. See *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 538, 920 P.2d 947 (1996) (distinguishing between "actual agent" and "apparent agent"); *Professional Lens Plan, Inc.*, 238 Kan. at 390-91 (discussing "express agency," "implied agency," and "ostensible or apparent agency"). Distinguishing between actual agents and apparent agents may suggest that the two are inevitably mutually exclusive when they are not. See *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 271-72, 225 P.3d 707 (2010) (bank employee lacked actual authority to honor overdrafts as it was expressly prohibited by bank rules, but had apparent authority to do so); Restatement (Third) of Agency § 2.03, comment c ("Apparent authority often coincides with actual authority.").

*Historical Application of Kansas Common Law Agency Principles to Insurance Cases*

Under common law, "[i]nsurance intermediaries are generally characterized as either 'agents' or 'brokers.'" 1 Thomas & Mootz, New Appleman on Insurance Law § 2.03[4][a] (Library ed. 2014); see *Rosedale Securities Co. v. Home Ins. Co.*, 120 Kan. 415, 243 P. 1023 (1926); *Pettijohn v. Insurance Co.*, 100 Kan. 482, 164 P. 1096 (1917); see also Restatement (Third) of Agency § 3.14, comment c (2005). "Traditionally, an 'agent' is the representative of the insurer, while the 'broker' is the representative of the insured, except that the 'broker' is a representative of the insurer for the purpose of

receiving the first premium." 1 Harnett, Responsibilities of Insurance Agents and Brokers § 2.02 (2008); see *Rosedale*, 120 Kan. at 418-19. But it is not these characterizations that are important for our inquiry; it is the intentions of the insurer and intermediary in creating an agency relationship and the authority the insurer vests with the intermediary that are critical. See *Curran v. Industrial Com'n of Arizona*, 156 Ariz. 434, 437, 752 P.2d 523 (Ct. App. 1988) ("Where the insurer's actions create actual or apparent authority for a broker to act on its behalf, the broker becomes the agent of the insurer." [citing Couch on Insurance and Appleman]). Moreover, "the distinction between brokers and agents does not prevent a broker from acting as an agent, and a person may be both an insurance agent and an insurance broker, functioning at different times in different capacities." 3 Plitt, Maldonado & Rogers, Couch on Insurance 3d § 45:3 (2011); see *Stamps v. Consolidated Underwriters*, 205 Kan. 187, 197, 468 P.2d 84 (1970) ("For some purposes and under certain circumstances, a broker may represent either the insured or insurer, or both."); *Rosedale*, 120 Kan. at 421-22 (broker may be agent of insurer under some conditions); Restatement (Third) of Agency § 3.14, comment c ("The same actor may occupy different roles at successive points in an ongoing interaction among the same parties.").

Determining whether an intermediary was acting as a representative of the insured or the insurer is important because it can determine whether an intermediary's knowledge and acts are imputable to the insured or the insurer. 1 Appleman § 2.03[2] (noting general agency principles apply); 3 Couch § 45:1; see Restatement (Third) of Agency § 5.03 (2005) (knowledge of fact agent knows or has reason to know imputed to principal if knowledge of fact material to agent's duties to principal).

Both this court and other jurisdictions have identified and defined several common relationships in the insurance industry, *e.g.*, soliciting agent and broker. These identifiers and accompanying definitions are useful for referring to particular agency relationships

21

characterized by particular grants of authority. Nevertheless, the appropriate industry label to apply is secondary to conducting an agency analysis based on the facts of a case.

In *Earth Scientists v. United States Fidelity & Guar.*, Chief Judge Earl E. O'Connor of the federal District of Kansas defined a soliciting agent as "one who takes applications for insurance, forwards them to the company that issued the policy, collects the premiums and delivers the policies to the insured." 619 F. Supp. 1465, 1472 (D. Kan. 1985) (citing *Pettijohn*, 100 Kan. at 485). Judge O'Connor noted that a soliciting agent is not a general agent, and a soliciting agent "has no authority to accept notices, make agreements, or waive provisions in the contract." 619 F. Supp. at 1472-73. None of these limitations on a soliciting agent's authority is at issue in this case.

We agree with the *Earth Scientist*s definition of soliciting agent, which is in line with several other authorities. See 3 Couch § 45:23 ("A soliciting agent is authorized by an insurer to sell insurance, receive applications, deliver policies, and collect premiums but has no authority to bind the insurer.") (citing *Earth Scientists* opinion, others); 1 Harnett § 2.02[2][a] (soliciting agent is "[t]he salesman type operative who sells, gets applications and forwards them to the general agent or insurer, delivers policies, and picks up the premium"); Black's Law Dictionary 70 (8th ed. 2004) (defining soliciting agent as "[a]n agent with limited authority relating to the solicitation or submission of applications to an insurance company but usu[ally] without authority to bind the insurer, as by accepting the applications on behalf of the company"); 43 Am. Jur. 2d, Insurance § 133, p. 178-79 ("[A soliciting agent's] authority is limited to soliciting insurance, submitting applications, and performing acts incidental to that power, including collecting the first premium. A soliciting agent would be expected to have the power to explain the lines of insurance sold by the company, take applications, quote premium rates, and explain the terms and limitations of the insurer's products.").

22

Our acceptance of the *Earth Scientists* definition of soliciting agent means we must reject the Court of Appeals panel's evident effort to expand it by adding requirements based on a distinguishable case. See *Golden Rule Ins. Co. v. Tomlinson*, 47 Kan. App. 2d 408, 426-27, 277 P.3d 421 (2012) (citing *Pettijohn v. Insurance Co.*, 100 Kan. 482, 483-84, 164 P. 1096 [1917]).

We also discern that the Court of Appeals erred in applying our definition of broker.

In *Rosedale*, this court defined broker as "one who acts as middleman between the insured and the insurer; one who solicits contracts from the public under no employment from any special company, but, having secured an order, places the insurance with a company selected by the insured, or, in the absence of any selection by him, then with the company selected by such broker." 120 Kan. 415, Syl. ¶ 1; see 3 Couch § 45:1 ("A broker represents the insured by acting as a middleman between the insured and the insurer; soliciting insurance from the public under no employment from any special company; and, upon securing an order, places it with a company selected by the insured, or if the insured has no preference, with a company selected by the broker."). The *Rosedale* court held that generally "an insurance broker is the agent and representative of the insured for the purpose of making the application and procuring the policy." 120 Kan. 415, Syl. ¶ 2. The major distinction between the definition of a soliciting agent and a broker is the broker's ability to place insurance, in the absence of any selection by the client, with a company selected by such broker.

The Court of Appeals erred when it concluded that McClary's "recommendation *and ultimate selection of Golden Rule* did not alter the fact that in doing so he was acting on behalf of Denney, not on behalf of Golden Rule." (Emphasis added.) *Golden Rule*, 47 Kan. App. 2d at 427. The record simply contains no support for the idea that McClary

had authority, in the absence of any choice by Denney, to select an insurer to provide her health coverage. The only evidence demonstrates exactly the contrary. Before submitting the application, McClary contacted Denney and asked for her permission to submit it to Golden Rule. McClary could not unilaterally select a company.

Finally, we also disagree with the panel's conclusion that the description of an insurance broker as outlined in *Rosedale* fit "McClary to a T." *Golden Rule*, 47 Kan. App. 2d at 427. There are several key factual differences between McClary and the broker in that case. The broker in *Rosedale* was in no way affiliated with the defendant insurance company. The insured had directed the broker to apply for insurance on his automobile, but "he did not designate the kind of insurance to apply for." 120 Kan. at 417. The broker placed the insurance through agents for the defendant-insurance company. None of these facts was present in this case.

*Kansas Statutory Law on Insurance Agents and Brokers*

The Department's alternative argument for the existence of a principal-agent relationship between Golden Rule and McClary is based on current Kansas statutes.

In its decision, the Court of Appeals summarily dismissed the Department's assertion of a statutory basis for McClary's status as agent for Golden Rule, relying on this court's 1920 decision in *Eikelberger v. Insurance Co.*, 107 Kan. 9, 12, 190 P. 611 (1920). *Golden Rule*, 47 Kan. App. 2d at 422.

In *Eikelberger*, this court reviewed two statutes, one of which required insurance agents be licensed by the state insurance department. As the Court of Appeals noted in *Golden Rule*, *Eikelberger* held that "the license issued by the insurance department to a local insurance agent, at the request of his principal, is merely the state's permit for him

24

to ply his business, and a tacit admission by the insurance superintendent that so far as he is advised the licensee is an honest man, or at least a man of fair business reputation." 107 Kan. at 11. Accordingly, the Court of Appeals held that "[t]he issuance of a license does not define the agent's powers to bind an insurance company, nor does it change the general law of agency." *Golden Rule*, 47 Kan. App. 2d at 422.

The Department discounts the Court of Appeals' reliance on *Eikelberger*, because the opinion predated the current statutory scheme for insurance agent licensing and appointment "by eight decades."

The Kansas Uniform Insurance Agents Licensing Act makes it unlawful for any person to "sell, solicit or negotiate any insurance within this state unless such person has been issued a license as an insurance agent in accordance with this act." K.S.A. 2013 Supp. 40-4905(a). The Act defines "insurance agent" and "agent" as "any person required to be licensed [under the insurance code] to sell, solicit or negotiate insurance." K.S.A. 2013 Supp. 40-4902(k). A "broker" is "any individual who acts or aids in any manner in negotiating contracts of insurance, or in placing risks or in soliciting or effecting contracts of insurance as an agent for an insured other than such individual and not as an agent of an insurance company or any other type of insurance carrier." K.S.A. 2013 Supp. 40-4902(d). The Act also provides that "[f]or the purposes of this act, whenever the terms 'agent' or 'broker' appear [in the insurance code], each term shall mean insurance agent unless the context requires otherwise." K.S.A. 2013 Supp. 40-4902(k). We read these statutes to mean that a principal-agent relationship, as defined at common law, may exist between an insurance agent and an insurer or between an insurance agent and an insured. Thus statutory definitions of agent and broker cover more than insurance agents clothed with express actual authority by a principal insurance company.

In addition, as for the effect of licensing under the Act, it appears the Court of Appeals was correct. Although the current Act is more detailed on the ins and outs of the licensing process than its predecessor statutes in effect at the time of the *Eikelberger* decision, licensing remains a mere permitting process. It does not affect the viability or applicability of the general common law of agency on particular facts.

Under the Act, licensing is distinct from appointment. An insurance company may appoint a licensed insurance agent "as the insurance agent of the company under the license in effect for the insurance agent." K.S.A. 2013 Supp. 40-4912(a). In fact, such appointment and certification is required in order for an agent or broker to transact business of the insurer. K.S.A. 2013 Supp. 40-241 (issuance of license confers no authority until agent certified by company); K.S.A. 2013 Supp. 40-4912.

Golden Rule suggests that no particular agency status should be read into the undisputed fact of its appointment of McClary, because it views appointment as simply a feature of the Kansas permitting process. But this suggestion blurs the statutory distinction between licensing and appointment. Golden Rule was not required to appoint McClary; it did so because the appointment would further Golden Rule's interests. Appointment enabled McClary's direct placement of business with Golden Rule, rather than through another insurance agent. See K.S.A. 2013 Supp. 40-4910(d) ("An insurance agent may place a kind or kinds of business, for which such insurance agent is licensed pursuant to this act, with an insurer for which such insurance agent is not an agent, by placing such business through an agent of such insurer.").

That being said, Golden Rule's appointment of McClary also does not automatically dispose of the agency issue in the Department's favor. The Department contends that the appointment under K.S.A. 2013 Supp. 40-4912 was enough on its own to bind Golden Rule to the acts and representations of McClary, seemingly without

26

limitation. But such an interpretation is not supported by the plain language of the statute. And we see no other indication that the legislature intended to supplant the whole of agency common law and make insurance companies strictly liable for the acts of their appointed agents. At most, K.S.A. 2013 Supp. 40-4912 and K.S.A. 2013 Supp. 40-4910(d) provide modest assistance in determining when an insurance intermediary is acting for the insurer or for the insured. Appointment is *a* fact but not *the only* fact to be considered in determining the existence of a principal-agent relationship. More importantly, appointment also does not define the scope of any appointed agent's authority.

*Substantial Evidence Viewed in Light of Record as a Whole*

We now turn to application of the law as we have clarified it, particularly whether the evidence supporting the Department's conclusion that McClary acted as Golden Rule's agent is substantial when viewed in light of the record as a whole. Again, our obligation to examine the record includes the responsibility to consider evidence contrary to the Department's position. See K.S.A. 2013 Supp. 77-621(d).

We recognize, as did the Court of Appeals, that the Department's explicit factual findings are sparse. But Golden Rule has not challenged the adequacy of the findings, presumably because the parties treat the underlying evidence as undisputed. That evidence includes:

- Golden Rule appointed McClary to transact business under K.S.A. 2013 Supp. 40-4912.
- McClary initiated contact with Denney.
- McClary and Denney were not acquainted before McClary initiated contact.

27

- McClary sought Denney's permission to submit the application to Golden Rule.
- McClary submitted Denney's application directly to Golden Rule.
- Golden Rule provided an online portal for McClary's use to submit applications, a portal not available to consumers, and it expressly authorized McClary to solicit and submit applications directly to it.
- After learning of McClary's conduct, Golden Rule sent him a letter that informed him he was not permitted to sign, either physically or electronically, insurance applications or supporting administrative forms for applicants.
- McClary was Denney's only contact with Golden Rule during the application process.
- Denney believed that McClary represented Golden Rule.
- McClary collected a voided check from Denney to enable Golden Rule to draw premiums electronically from Denney's bank account.
- Denney did not compensate McClary for his services.
- Golden Rule paid McClary a commission after the sale of the policy; McClary did not keep a portion of the premiums paid by Denney as his commission.

The evidence also includes Golden Rule's independent broker contract signed by McClary. That contract states in pertinent part:

> **"Independent Status.** *You* are an independent contractor relative to the *Company.* Although this *Contract* entitles *You* to submit applications to the *Company* on behalf of prospective *Clients, You* shall not represent to anyone that *You* act on behalf of the *Company,* except as expressly set forth in this *Contract.*

"Nothing contained in this *Contract,* or any written material or correspondence of the *Company,* shall be construed to create an employer-employee or principal-agent relationship between *You* and the *Company.* The parties recognize that:

"(a) Due to a particular state's licensing requirements, *You* may be appointed in that state as an 'agent'; and

"(b) From time to time the *Company* or others may refer to *You* as an 'agent.' These references may occur because of the general use of these words in everyday vocabulary.

"It is expressly intended and agreed that *You* are an independent contractor, acting as the agent of *Your Clients* and not as *Our* agent. *You* are free to exercise *Your* own judgment as to the time, place, and manner of dealing with *Your Clients* and potential *Clients*."

The contract also specifies that McClary is "authorized to: . . . Obtain and submit applications for *Insurance Products* to *Us* for *Our* consideration on behalf of persons for whom *You* are acting as broker."

It is on these facts that the Department ruled that McClary was an agent of Golden Rule and that Golden Rule was liable for McClary's omission. We must affirm if substantial evidence, when viewed in light of the record as a whole, supports the Department's decision under the agency analysis we have outlined above.

On the initial question of whether a principal-agent relationship existed, we note that Golden Rule made McClary its appointed agent under K.S.A. 2013 Supp. 40-4912. In addition, Golden Rule and McClary entered into an agreement that set forth duties for each party.

Golden Rule argues that the contract "clearly prohibits McClary from acting as an agent of Golden Rule or in any capacity except as an independent broker on behalf of his

own clients or prospective clients." But that portion of the contract does not necessarily settle the issue of whether Golden Rule and McClary had a principal-agent relationship.

> "Many insurance companies provide in their applications, policies, or agency contracts that the broker is the agent of the insured. Courts will often disregard the wording, finding that the broker represents the insurer and not the insured. Additionally, an agency contract specifying that an individual is an independent contractor and not an employee of the insurance company is not determinative of an individual's status as a broker representing the insured or as an agent representing the insurer." 3 Couch § 45:6.

See 43 Am. Jur. 2d, Insurance § 134, p. 179 (contract identifying intermediary as independent contractor "does not preclude the possibility that, in procuring information for an insurer, the soliciting agent was acting as an agent of the insurer"); see also *In re Tax Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 541, 920 P.2d 947 (1996) (implied agency relationship may exist notwithstanding denial by alleged principal).

Here, the contract expressly provides for McClary's independent status and identifies him as both a broker and an independent contractor, but it also authorizes McClary to "[o]btain and submit," *i.e.*, solicit, applications for insurance and to collect initial premiums in exchange for commissions paid by Golden Rule. The contract provides that McClary is "prohibited from engaging in any act not expressly authorized by [Golden Rule]." The contract binds McClary to a confidentiality agreement, requires that he ensure the accuracy of applications he submits, and allows him to use Golden Rule advertising material, provided he does not combine the company's advertising material with another company's advertising material. All of these elements of the contract demonstrate Golden Rule's control of McClary's behavior and its delineation of the limits of his authority. They could certainly be relied upon by a factfinder to prove an agency relationship between Golden Rule and McClary.

We conclude that substantial evidence supported the existence of a principal-agent relationship. But the existence of a principal-agent relationship alone is not dispositive on whether Golden Rule is liable for McClary's omission. We must next decide whether evidence supported a finding that McClary had actual authority to solicit and submit applications to Golden Rule or, if not, whether he had apparent authority to do so.

Determining the scope of an agent's actual authority will often require looking at the same evidence that established the existence of the relationship in the first place. Here, as mentioned above, the agreement between McClary and Golden Rule authorized McClary to "[o]btain and submit" applications for insurance. This express declaration vested McClary with actual authority to solicit and submit applications to Golden Rule. In addition, Golden Rule's appointment of McClary under the statute allowed him to submit insurance applications directly to Golden Rule, and Golden Rule provided him an online portal to do so. Substantial evidence supports the conclusion that McClary had the actual authority to solicit and submit applications directly to Golden Rule. This is the type of relationship and the scope of authority commonly held by a soliciting agent, as that term has been defined in the caselaw.

In its brief, Golden Rule emphasized that McClary was able to sell policies for multiple insurance companies and quoted *Damon's Missouri, Inc. v. Davis*, 63 Ohio St. 3d 605, 611, 590 N.E.2d 254 (1992). *Damon's* states that "an insurance agent has a fixed, permanent and exclusive relationship with the insurance company that the agent represents." But Golden Rule failed to quote the additional holding from the case:

> "[A]n insurance broker becomes an agent for a particular insurer when: (1) the broker
> notifies its customer that he or she intends to place the customer's insurance coverage
> with a particular insurer; or (2) the broker accepts an application for insurance on behalf
> of the customer." 63 Ohio St. 3d at 612.

31

It thus appears that, on the same facts as those before us here, an Ohio court would hold that an agency relationship between Golden Rule and McClary existed. McClary clearly was not a captive or exclusive agent, but his simultaneous appointment by other insurance companies did not make it impossible for him to qualify as a soliciting agent for Golden Rule. This is exactly the conclusion reached by two other sister states examining Golden Rule's activities in their jurisdictions. See *Golden Rule Ins. Co. v. Montgomery*, 435 F. Supp. 2d 980, 991-92 (D. Ariz. 2006) (holding sufficient evidence to raise question of fact whether broker agent of insurance company under similar facts); *Tassin v. Golden Rule Ins. Co.*, 94-0362 (La. App. 1 Cir. 12/22/94), 649 So. 2d 1050, 1055-56 (holding broker agent of insurance company under similar facts).

Our decision on the existence and scope of McClary's actual authority eliminates the need for this court to examine apparent authority. We pause only to recognize again that actual authority does not preclude the existence of apparent authority, and certain of the facts in this case would support its existence as well.

*Violations of K.S.A. 2013 Supp. 40-2404(9) and Remedy*

Because we have decided that substantial evidence when considered in light of the record as a whole supported the Department's determination that McClary was Golden Rule's agent and that his actions were within his authority, we must review the Department's identification of two violations of K.S.A. 2013 Supp. 40-2404(9) and the remedy it ordered under K.S.A. 40-2407(a)(3).

K.S.A. 2013 Supp. 40-2404(9) provides:

"It is an unfair claim settlement practice if any of the following or any rules and regulations pertaining thereto are: (A) Committed flagrantly and in conscious disregard of such provisions, or (B) committed with such frequency as to indicate a general business practice.

. . . .

"(d) refusing to pay claims without conducting a reasonable investigation based upon all available information;

. . . .

"(f) not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."

On subsection (d), in the Department's view, Golden Rule violated K.S.A. 40-2404(9)(d) when it effectively refused to pay any claim associated with Denney's preexisting condition, instead coupling a demand for an exclusionary rider redefining the insurance coverage with a threat of policy termination.

As the Court of Appeals noted, Golden Rule conducted a 4-month investigation after Denney sought preapproval for surgery. The Court of Appeals characterized this investigation as "prompt and reasonable." 47 Kan. App. 2d at 428. But there is a problem with that characterization. The investigation's sole focus was verification of Denney's preexisting medical condition. No investigation of the nature of the relationship between Golden Rule and its appointed agent, McClary, was pursued, even after Golden Rule became aware that McClary, rather than Denney, was likely to blame for the misleading

omission in Denney's insurance application. Golden Rule's lack of any effort to reasonably investigate the agency relationship provides a sufficient basis for the Department's finding of a K.S.A. 2013 Supp. 40-2404(9)(d) violation, as Golden Rule's stonewalling conduct qualified as gross and flagrant in light of the circumstances of this case.

On subsection (f), in contrast, we cannot affirm the Department's determination that Golden Rule did not "attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims" on which liability had become "reasonably clear." The Department did not identify facts in the record that support this ruling, and our review does not uncover any. The agency status at the heart of this case needed to be investigated, but it remained in valid dispute up to today. In other words, Golden Rule's liability had not become "reasonably clear." We must therefore reverse the Department and district court on their ruling that Golden Rule violated subsection (f).

Because we affirm the finding of a violation of K.S.A. 2013 Supp. 40-2404(9)(d), the Department was authorized to order a remedy under K.S.A. 40-2407. Its subsection (a)(3) permits the commissioner to order "redress of the injury by requiring the refund of any premiums paid by, the payment of any moneys withheld from, any consumer . . . ." The phrase "moneys withheld" necessarily includes payments authorized under an insurance policy but unpaid by the insurance company. We therefore affirm the Department's authorized and appropriate remedy.

CONCLUSION

Under the authorities and rationales described above, we (a) reverse the Court of Appeals' opinion reversing the district court's judgment affirming the Kansas Insurance Department's final order; (b) affirm the district court's judgment in part and reverse in

34

part; and (c) affirm the Kansas Insurance Department's final order in part and reverse in part.

MORITZ, J., not participating.

MICHAEL E. WARD, District Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** District Judge Ward was appointed to hear case No. 105,245 vice Justice Moritz pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.