NOT DESIGNATED FOR PUBLICATION

No. 121,209

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EDWARD ARNOLD WARREN JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed July 17, 2020.
Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

PER CURIAM: Edward Arnold Warren Jr. appeals his convictions for 21 counts of
violating a protective order. Warren claims there was insufficient evidence and that he
was covered by a statutory exception that permitted him to have contact with the party
who was protected by the order. We disagree and affirm his convictions.

In 2018, Warren appeared in court on a criminal charge of domestic battery. At
that time, the court entered a protective order preventing him from making direct or

1

indirect contact with A.H. The order contains language that prohibited him from making contact directly or through an intermediary.

Undeterred by this initial order, Warren was charged about a month later in a second criminal case with domestic battery. The court issued another protective order in that prosecution. This time, while sitting in his cell in the county jail, Warren called A.H. 78 times. On occasion, he called her seven times in one day. All of these calls were recorded by the jail staff. Large notices are placed in the jail to inform prisoners that the calls are recorded. Based largely on these calls, the state charged Warren with 21 counts of violating a protective order. Each count is a Class A misdemeanor. With these new charges, the court issued a third protective order which contained the same prohibitions as the first two orders.

Warren, acting as his own counsel, demanded a jury trial on these charges. In a pretrial motion, Warren asked the court to rule that since he was acting as his own attorney, his conduct fell under a statutory exception that allowed attorneys and those working on behalf of the defendant's counsel to contact the subject of a protective order. The court denied this motion. In this appeal, Warren uses the same argument that the statutory exemption applied to him.

*There was ample evidence admitted at trial.*

At Warren's trial, the records custodian at the county jail testified about how inmates made telephone calls from jail. Each inmate is given a unique personal identification number to use when beginning a call. A recording informs both parties at the beginning of the call that the calls are recorded and monitored and can be turned over to law enforcement. The records custodian also testified that large red signs are fixed above all inmate phones informing them their calls are recorded and monitored. Warren's call log from the jail was admitted into evidence without objection. Warren's call log

showed that he called A.H.'s telephone number on the dates that corresponded to the charges.

A.H. testified that the telephone number listed in Warren's call log was her number. She said that Warren called her from jail between July 17 and August 13, 2018, and that he called her almost daily.

The detective who investigated the first domestic battery case filed against Warren testified that he monitored calls from the jail when there was a protective order. The detective examined the jail's inmate phone records by searching under the inmate's name and related phone numbers. He searched for Warren's name and A.H.'s phone number and discovered Warren was calling her. The detective listened to some of the calls and recognized Warren's and A.H.'s voices.

The State offered into evidence a recorded collection of Warren's calls to A.H., which corresponded to Warren's call log. The recording contained "snippets" of the calls to identify voices, but it did not include Warren's and A.H.'s entire conversations. The detective testified that the recording contained 22 calls, one of which was on the morning before Warren's first appearance, and 21 that were after Warren received notice of the protective order at that first appearance.

Warren testified on his own behalf. He acknowledged that the first call on the recording was him telling A.H., "After I see the judge, I'm not going to be able to call you anymore." Warren also admitted that even after seeing the judge that day and learning of the protective order, he continued to call A.H. from jail. Warren testified he was not the attorney of record when he made the calls, so his defense was "no longer that I was my own attorney," but also that he was "any person acting on such attorney's behalf," under the statutory exception. He maintained that he called A.H. to defend himself. Warren told the jury, "I played the dangerous game to clear my name."

The jury found Warren guilty on all counts.

*Warren claims insufficient evidence and a statutory exemption.*

To us, Warren argues that there was insufficient evidence to convict him of violating the protective order. He also contends that he was an exception to the protective order because he was representing himself and he was also "any person" working on behalf of his defense. He asks that his convictions be reversed.

The State contends the evidence at trial was enough to convict him of violating the protective order. The State also contends that Warren's interpretation of K.S.A. 2019 Supp. 21-5924(c) is without foundation, inapplicable to him because he was represented by an attorney at the time, and the jury did not have to accept his theory of defense.

A review of some fundamental points of law is helpful at this point. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Under K.S.A. 2019 Supp. 21-5924(a)(4), for the State to establish a defendant violated a protective order, it must prove beyond a reasonable doubt that a defendant knowingly violated an order issued as a condition of:
- pretrial release;
- diversion;
- probation;
- suspended sentence;

- postrelease supervision; or
- at any other time during the criminal case that orders the person to refrain from having any direct or indirect contact with another person.

A person acts knowingly "when such person is aware of the nature of such person's conduct or that the circumstances exist." K.S.A. 2019 Supp. 21-5202(i). Knowledge of the protective order is required. *State v. Hunter*, No. 113,865, 2017 WL 383384, at *3 (Kan. App. 2017) (unpublished opinion).

*There was ample evidence to support his convictions.*

Without restating all of the evidence that we reviewed above, we hold there was sufficient evidence admitted at trial to convince a jury beyond a reasonable doubt that Warren knew about the protective order, and violated it when he continued to call A.H.

*We turn to Warren's claim of being exempt from the order.*

Basically, Warren argues an exception for attorneys found in K.S.A. 21-5924(c) applies to him.

"No protective order, as set forth in this section, shall be construed to prohibit an attorney, or any person acting on such attorney's behalf who is representing the defendant in any civil or criminal proceeding, from contacting the protected party for a legitimate purpose within the scope of the civil or criminal proceeding. The attorney, or person acting on such attorney's behalf shall be identified in such contact."

Warren argues that he was "any person" because he was acting on his own behalf in trying to formulate a defense to the charges in the domestic assault and battery cases. In assessing this argument, we must examine the statute that Warren relies on.

*The rules that guide us.*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). And the most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019).

An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). With no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. *State v. Pulliam*, 308 Kan. 1354, 1364, 430 P.3d 39 (2018). "This court may correct clerical errors or inadvertent errors in terminology if the intent of the legislature is plain and unmistakable." *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, 464, 228 P.3d 403 (2010).

In our view, the general purpose of these statutes permitting protective orders is to provide some relief to people harassed verbally, physically, and emotionally by others who are intent upon intruding themselves into the protected person's life. The statute recognizes that we have a right to be left alone. Violation of such orders have penal consequences. The order issued here is a clear example of an attempt to provide such protection. With this general purpose in mind, we view the aim of these statutes is to provide protection and not prevent protection. In other words, we interpret this statute to provide protection to A.H. and not deny her protection.

Here, the language Warren suggests is ambiguous is "any person" in subparagraph (c). He claims he is "any person" representing the defendant. He argues even defendants who are represented by counsel represent themselves because attorneys cannot act without their clients' permission. Warren oversimplifies and misreads subparagraph (c). We hold that Warren's argument fails.

We first note that subparagraph (c) does not except from the prohibitions of a protective order any person acting on behalf of *the defendant*. It provides an exception for an attorney representing the defendant, or "any person" acting on that *attorney's* behalf. Even then, the attorney or the agent for the attorney may only contact the protected subject of the order for a legitimate purpose within the scope of the proceeding. See K.S.A. 2019 Supp. 21-5924(c).

We must point out that in an attorney-client relationship, the client is the principal and the attorney is the agent. Someone acting on behalf of the attorney is the agent of the agent. A client cannot be an agent of the agent since the client is the principal. Warren therefore cannot be an attorney's agent. In *Golden Rule Insurance Company v. Tomlinson*, 300 Kan. 944, 953-58, 335 P.3d 1178 (2014), the Kansas Supreme Court relied upon the Third Restatement of Agency which defines agency as the

> "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2005).

Under that definition, a defendant could not be the agent of his defense attorney because the defendant does not act on behalf of the attorney and is not subject to the attorney's control. Warren is not "any person" as contemplated by the statutory exemption.

7

Warren admits he was not the attorney of record when he was calling A.H. from jail. He provided no testimony nor other evidence at his trial that he was acting on behalf of, or at the request of, his court-appointed attorney for a legitimate purpose when he called A.H. He also knew that he would likely be notified of a protective order at his first appearance because he told A.H. that after he saw the judge, he would not be allowed to call her anymore.

The record does not show that he made any claims then that the order did not apply to him because he planned to represent himself or he was assisting his attorney. To the contrary, he believed he would be ordered to not have any contact with A.H. and told her as much, but after learning of the protective order, he continued to call her. We note with interest that in a pretrial hearing, Warren stated, "This [interpretation of subparagraph (c)] allows me to get away with it."

The protective order was issued against Warren in one domestic battery case and then later, in another case. The charges Warren faced in those two cases included criminal possession of a weapon by a felon, criminal threat, domestic battery, aggravated domestic battery, criminal restraint, and aggravated assault. The district court also issued the protective order to protect A.H. from Warren and to protect the State's case against Warren's potential influence on A.H.—a witness for the State.

To construe K.S.A. 2019 Supp. 21-5924(c) to allow a defendant to contact the protected subject of such an order because the defendant has elected in that moment or during the case to represent himself undermines the Legislature's intent and the purpose of the order. In other words, Warren's interpretation of subparagraph (c) leads to an unreasonable and absurd result and renders the entire statute meaningless.

The statute reasonably allows a defendant's attorney or a person working on the attorney's behalf to contact the subject for a legitimate purpose related to the scope of the

8

proceeding. Had the Legislature intended to create an exception for pro se defendants, it would have clearly stated as much. We see no reason to interpret this statute in a way that allows an exception for attorneys and their agents to include defendants.

In the light most favorable to the prosecution, there was sufficient evidence for the jurors to find beyond a reasonable doubt that Warren knowingly violated the protective order. His statutory interpretation is flawed. We affirm his convictions.

Affirmed.